1999 UT 49

**SNOW, NUFFER, ENGSTROM & DRAKE, Plaintiff and Respondent,**

v.

**James A. TANASSE, Defendant and Petitioner.**

**No. 970079.**

Supreme Court of Utah.

May 18, 1999.

---

David Nuffer, St. George, for plaintiff.

Robert O. Kurth, Jr., Las Vegas, Nev., for defendant.

DURHAM, Associate Chief Justice:

¶ 1 Defendant James Tanasse seeks review of a court of appeals' decision upholding the dismissal of his motion to set aside an execution sale of his legal malpractice cause of action against plaintiff law firm. In upholding the trial court's dismissal, the court of appeals held that (a) it was unnecessary to determine whether a legal malpractice claim is assignable in Utah; (b) a legal malpractice cause of action is not beyond the reach of an involuntary transfer such as a judicially sanctioned execution sale; and (c) it is not against public policy in the state of Utah for a law firm to purchase in an execution sale a legal malpractice claim asserted against it in a separate lawsuit. *Tanasse v. Snow*, 929 P.2d 351, 352 (Utah Ct.App.1996). We affirm in part and reverse in part.

¶ 2 In 1992, Tanasse and Club St. George, Inc., retained defendant law firm Snow, Nuffer, Engstrom & Drake ("Snow Nuffer") to prepare a lease agreement between Club St. George as landlord, and Nedra Pauline and Terry Burchinal, doing business as Nedra's Cafe, as tenants. Thereafter, a dispute arose between the parties to the lease. An eviction was subsequently prepared and executed on Burchinal. Following eviction, Burchinal, doing business as Nedra's Cafe, filed suit against Tanasse and Club St. George for wrongful eviction.

¶ 13 Soon thereafter, Snow Nuffer withdrew as counsel for Tanasse and Club St. George due to nonpayment of attorney fees in the amount of approximately $14,000. Immediately after withdrawing as counsel, Snow Nuffer filed a lawsuit against Tanasse, Young–Tanasse, ·Inc., and Club St. George, seeking to collect on a promissory note for attorney fees. The law firm obtained a default judgment against Tanasse on June 8, 1993.

¶ 4 On September 7, 1993, the Burchinal wrongful eviction action came to trial. Tanasse and Club St. George had to retain new counsel to defend them. The wrongful eviction trial resulted in a judgment of over $100,000 entered against Tanasse and Club St. George.. Several months later, Tanasse, Young–Tanasse, and Club St. George filed a legal malpractice lawsuit against Snow Nuffer. Meanwhile, after obtaining the default judgment against Tanasse, Snow Nuffer sought to recover on its default judgment against Tanasse by executing on Tanasse's interest in the legal malpractice action.

¶ 5 On December 1, 1994, the law firm purchased the malpractice claim for $10,000 at a sheriff's auction initiated by Snow Nuffer. The law firm had filed a praecipe requesting the Washington County Sheriff to execute on and sell all the right, title, equity, and interest of James A. Tanasse, Club St. George, and Young–Tanasse in the malpractice claim.

¶ 6 After purchasing the malpractice claim against it, Snow Nuffer filed a partial satisfaction of judgment in its collection action against Tanasse, leaving in place a deficiency judgment. Tanasse then filed a motion to set aside the sale, which was denied by the trial court. The court of appeals affirmed. We granted certiorari to review the question of whether a law firm may purchase at an execution sale a legal malpractice claim filed against it by the judgment debtor in order to extinguish the lawsuit.

¶ 7 We review the following three issues as framed and addressed by the court of appeals:

> (1) Are legal malpractice claims assignable? (2) Even if they are not, may they be reached by execution? (3) Even assuming that a legal malpractice cause of action can generally be levied upon by a judgment creditor through an execution sale, does public policy preclude the very law firm against whom the claim is asserted from purchasing the claim?

*Tanasse*, 929 P.2d at 352. These questions of law are reviewed under a correction of error standard. *State v. Pena*, 869 P.2d 932, 936 (Utah 1994). We consider the issues before us as follows.

## I. ASSIGNABILITY OF LEGAL MALPRACTICE CLAIMS

¶ 8 We affirm the court of appeals' determination that there is no need to decide whether a legal malpractice claim is assignable under Utah law in order to resolve this particular dispute. *Tanasse,* 929 P.2d at 353. Tanasse never attempted to voluntarily assign his legal malpractice claim, and Snow Nuffer has not tried to assign the claim since acquiring it through execution. Acquisition of a legal malpractice claim through purchase at a sheriff's auction in order to satisfy a default judgment is not the same as acquiring it through a voluntary assignment. Thus, the issue of the claim's assignability was not before the court of appeals and is not before us.

## II. INVOLUNTARY TRANSFER OF LEGAL MALPRACTICE CLAIMS

■ ¶ 9 We also affirm the court of appeals' holding that a legal malpractice claim can be reached through an involuntary transfer such as execution. *Tanasse,* 929 P.2d at 354. Rule 69 of the Utah Rules of Civil Procedure states that a sheriff shall "execute the writ [of execution] against the non-exempt property of the judgment debtor by levying on a sufficient amount of property, if there is sufficient property; collecting or selling the choses in action and selling the other property in the manner set forth herein." Utah R. Civ. P. 69(f). A "chose in action" has been defined as "a claim or debt upon which a recovery may be made in a lawsuit. It is not a present possession, but merely a right to sue; it becomes a 'possessory thing' only upon successful completion of a lawsuit." *Barron's Law Dictionary* 71 (3d ed.1991). Accordingly, we hold that a legal malpractice claim, like any other chose in action, may ordinarily be acquired by a creditor through attachment and execution.

¶ 10 While this is a question of first impression in Utah, we note that a number of states permit a "judgment creditor to execute upon a judgment debtor's cause of ac-

tion against its insurer." *Denham v. Farmers Ins. Co.,* 213 Cal.App.3d 1061, 1070, 262 Cal.Rptr. 146, 151 (Ct.App.1989) (referencing *Bergen v. F/V St. Patrick,* 686 F.Supp. 786 (D.Alaska 1988); *Whitehead v. Van Leuven,* 347 F.Supp. 505 (D.Idaho 1972); *Steffens v. American Standard Ins. Co. of Wis.,* 181 N.W.2d 174 (Iowa 1970)). Medical malpractice claims, for example, have been held to be subject to attachment and execution by creditors. *Woody's Olympia Lumber, Inc. v. Roney,* 9 Wash.App. 626, 513 P.2d 849, 850–54 (1973). The *Denham* court interpreting Nevada law, held that, absent direct language to the contrary, *all* causes of action are subject to execution. *See Denham,* 262 Cal.Rptr. at 152. Like Nevada, Utah's rules of civil procedure contain no direct language exempting causes of action from execution.[1] *See* Utah R. Civ. P. 69. Rather, as the court of appeals noted, the term "chose in action" is used "in the Utah version of Rule 69 without restriction of any sort." *Tanasse,* 929 P.2d at 354. Thus, we view rule 69 to encompass all choses in action, including causes of action for legal malpractice.

■ ¶ 11 *Ikuno v. Yip,* 912 F.2d 306, 313–14 (9th Cir.1990), provides further support for our holding that legal malpractice claims may be reached through an execution sale. In *Ikuno,* the Ninth Circuit Court of Appeals applied Washington state law to find that a legal negligence claim "was property subject to execution." *Id.* at 314. The Ninth Circuit relied primarily on *Woody's Olympia,* cited above, which liberally construed the Washington execution statute as follows:

> "[O]ur statute is sufficiently broad to include unliquidated tort claims even if of dubious value, and we see no reason to limit by judicial construction or prohibit the judicial process of attachment or execution by excluding such claims. If such a step is to be taken, it is for the legislature and not for the courts."

*Id.* (quoting *Woody's Olympia,* 513 P.2d at 853–54). We similarly hold that our writ of execution rules are quite broad and, absent

---

1.  California statutory law, by contrast, affirmatively states that a cause of action is not subject to execution of any kind. *See Denham,* 262 Cal. Rptr. at 152 (referencing California Code of Civil Procedure section 699.720).

legislative proscription, encompass unliquidated tort claims, including legal negligence actions.[2]

## III. PUBLIC POLICY

■ ¶ 12 Notwithstanding our determination that a legal malpractice cause of action is subject to execution and can generally be purchased by a judgment creditor, we reverse the court of appeals' determination that the very law firm against which a malpractice claim is brought may purchase the cause of action. We do so on the basis of public policy. This question is one that this court is particularly suited to decide, because the public policy concerns at issue closely touch on our regulatory and supervisory responsibilities over the practice of law. *See Black v. Clegg*, 938 P.2d 293, 297 (Utah 1997) (relying on Utah Const. art. VIII, § 4 to hold that supreme court has power to regulate practice of law); *see also Barnard v. Utah State Bar*, 804 P.2d 526, 528 (Utah 1991). We hold that Snow Nuffer's actions—in forcing an execution sale of defendant's assets to satisfy a default judgment, purchasing Tanasse's pending legal malpractice claim against it, and extinguishing that claim through a motion to dismiss—violate public policy.

¶ 13 The acquisition of this legal malpractice claim by Snow Nuffer creates two problems. First it has the effect of denying Tanasse the right to a trial on his claims. *See* Utah Const. art. I, § 11. Snow Nuffer obviously has no intention to litigate a claim against itself:

When a judgment debtor's cause of action against his judgment creditor is turned over to the judgment creditor, the judgment creditor becomes the holder of a cause of action against himself. The judgment creditor becomes both plaintiff and defendant. Under such circumstances, any justiciable controversy is extinguished. Thus, the judgment debtor is forever deprived of his day in court on that cause of action.

*Criswell v. Ginsberg & Foreman*, 843 S.W.2d 304, 306 (Tex.Ct.App.1992). We are reluctant to permit the denial of access to our courts by persons asserting negligence claims against lawyers in this fashion.

¶ 14 Second, the appropriate value of the legal malpractice claim will never be fairly determined. *See Associated Ready Mix, Inc. v. Douglas*, 843 S.W.2d 758, 762 (Tex.Ct. App.1992). Snow Nuffer, whose incentives are in favor of under-valuation, purchased the claim and assigned it the value of $10,000. Snow Nuffer then filed a partial satisfaction of judgment in the amount of $10,000, leaving Tanasse with a debt to the firm of over $4,000. However, Snow Nuffer's assigned value of $10,000 was completely arbitrary. *See generally Commerce Savings Assoc. v. Welch*, 783 S.W.2d 668, 671 (Tex.Ct. App.1989)("We have no means of discerning the worth of Welch's cause of action against Commerce, which dealt with conditions surrounding a $16 million loan from Commerce to Welch. Welch's cause of action against Commerce could conceivably be worthless. On the other hand, it could be of considerable value."). Tanasse's claim against Snow Nuffer was predicated on a $102,000 judgment entered against him in a wrongful eviction case. Tanasse's cause of action could be worthless. On the other hand, it could be of

---

**2.** We note here the existence of other authority suggesting that legal malpractice claims should not be enforced if they are transferred through levy or execution. *See Tanasse*, 929 P.2d at 354 n. 8. However, we also note that one such opinion, from the Nevada Supreme Court, *Chaffee v. Smith*, expressly reserved "opinion on the question as to whether previously asserted legal malpractice actions are transferable." 98 Nev. 222, 645 P.2d 966, 966 (1982). *Chaffee* invalidated a previously unasserted cause of action for malpractice that had been acquired by levy and execution sale by the appellant. *Id.* In invalidating the execution sale of the malpractice cause of action, the court opined:

Here, however, the transferred interest involves a previously unasserted claim. As a matter of public policy, we cannot permit enforcement of a legal malpractice action which has been transferred by assignment or by levy and execution sale, but which was never pursued by the original client. The decision as to whether to bring a malpractice action against an attorney is one peculiarly vested in the client.

*Id.* (citations omitted). *Chaffee* involved the invalidation of an involuntary transfer of *unasserted* legal malpractice claims, not the invalidation of the involuntary transfer of *asserted* legal malpractice claims. *See id.* Therefore, we find *Chaffee* inapplicable to the question before us.

substantial value. If we allow Snow Nuffer's actions to stand, the true value of the action will never be determined, and yet Tanasse will remain liable not only for the judgment he claims was caused by Snow Nuffer's negligence but also for the deficiency judgment on the execution.

¶ 15 We recognize that both of the above-described problems are present in every situation in which a judgment creditor seeks to execute on an action pending against it. However, in situations like the present, in which the attorney-client relationship is at issue, these problems take on special significance. Allowing lawyers and law firms to execute on legal malpractice actions pending against them may significantly undermine the public trust in the legal profession and process and compromise the relationship.

¶ 16 As described above, this case involves the defendant-law firm's unilateral extinction of a malpractice claim against it through the purchase of the claim in an execution sale. While we have no evidence regarding the motives of Snow Nuffer in this case, a transaction like this will always occur in circumstances involving a conflict between a lawyer's interest and that of a former client. There is, in fact, a double layer of conflict here: the lawyer has sued the client for unpaid fees and the client is suing for malpractice. There may be a significant motivation for the lawyer to "buy out" the malpractice claim for a nominal amount (or at least for an amount the lawyer designates), leaving a deficiency judgment owing, while the client loses the opportunity to litigate. Although such a practice may be acceptable in cases not involving legal malpractice claims,[3] we believe public confidence in both the legal profession and the legal process as a whole would be damaged if lawyers were allowed to execute on legal malpractice claims brought against them.

¶ 17 Furthermore, we are unable to see how Snow Nuffer will be unfairly prejudiced if it is prohibited from executing against Tanasse's malpractice claim against it. If Tanasse goes forward with his action against Snow Nuffer, any judgment recovered will be offset against the legitimate amounts owed to Snow Nuffer including all interest that is properly due. If Tanasse chooses not to proceed with the litigation, Snow Nuffer will suffer no harm because the original judgment remains in place. Finally, the parties may choose to settle their disputes through arm's length negotiations, thereby mutually agreeing upon the value of the claims.

¶ 18 Accordingly, we hold that Snow Nuffer may not execute on Tanasse's legal malpractice claim against it. This holding simultaneously allows a law firm to recoup fees owed for services rendered and preserves a client's opportunity to litigate what may be legitimate legal malpractice claims. This holding balances the public's interest in a legal system and legal profession that is just in both appearance and fact with the equities for both the lawyer and the client.

¶ 19 In conclusion, we affirm the court of appeals' determination not to decide whether a legal malpractice claim is voluntarily assignable. We also affirm the court of appeals' holding that a legal malpractice claim can be executed upon and involuntarily transferred. However, we hold that it is against the public policy of Utah for a law firm to purchase in an execution sale a legal malpractice cause of action that has been filed against it. We therefore set aside the sheriff's sale.

¶ 20 Chief Justice HOWE and Justice RUSSON concur in Associate Chief Justice DURHAM'S opinion.

ZIMMERMAN, Justice, concurring and dissenting:

¶ 21 I concur in the result reached by the majority. However, I dissent from a portion of its reasoning and the resulting statement of the law. Specifically, I agree that the court of appeals properly refrained from determining whether a legal malpractice claim is assignable in Utah and properly held that a legal malpractice claim is not beyond the reach of an involuntary transfer such as a judicially sanctioned execution sale. I also agree with the majority that public policy should restrict a lawyer's ability to execute

---

**3.** We need not and do not reach this issue today.

on a malpractice cause of action held by a former client against that lawyer. However, I disagree with the scope of the prohibition fashioned by the majority.

¶ 22 The majority holds that no malpractice claim against a lawyer can be purchased by that lawyer at an execution sale under any circumstances. I think this goes too far. Instead, I would hold that a fairer balance between the public policy offended by a lawyer's potential ability to single out for extinction a legitimate claim against the lawyer and the right of every creditor, lawyers included, to levy on all the assets of a delinquent debtor would be reached by forbidding a lawyer to execute on a malpractice cause of action against that lawyer unless it is the only remaining asset of the debtor. Such a rule would be sufficient to preclude a lawyer from finding a way to execute upon and extinguish a cause of action against that lawyer when the client had other assets available to satisfy the debt owed—the abusive possibility that seems to underlie the majority's rule. Once that potential for overreaching is obviated, I can see no public purpose served by creating a unique species of property—malpractice causes of action—that are immune from levy under all circumstances by the lawyer against whom they are asserted. This can only serve to give the debtor additional and unjustified leverage over the lawyer in trying to settle such a suit for more than it is objectively worth. This may be good news to those suspicious of lawyers, but serves no other apparent purpose.

¶ 23 The only argument the majority offers in support of its blanket rule that warrants response here is the claim that unless the lawyer is barred from recovery, the "value of the legal malpractice claim will never be fairly determined." Under the rule I propose, the claim could be executed on only if there were no other assets. Such a situation is likely to arise only in the context of the debtor's bankruptcy. And, in such a situation, there is already in place enough structure to assure that the debtor is not unfairly overreached. If the judgement debtor has already filed for bankruptcy, the claim will be part of the bankruptcy estate and the bankruptcy trustee will be in a position to assess

and obtain the fair market value of the claim. On the other hand, if the execution against the malpractice claim precipitates the debtor's decline into bankruptcy, and the transfer was for less than reasonably equivalent value, the bankruptcy trustee will probably have the power to avoid the transfer.

¶ 24 To illustrate, 11 U.S.C.A. section 548 deals with fraudulent transfers. It states:

(a)(1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

. . . .

(B)(1) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation. . . .

11 U.S.C.A. § 548(Supp.1999). Because I would require that in order to execute against a legal malpractice claim, that claim must be the last asset, once that asset has been sold at an execution sale the debtor will, in all likelihood, be insolvent. Thus, if the execution against the claim took place within a year of the filing and was not for reasonably equivalent value, the trustee will have the power to avoid it. There is no need for the additional blanket protection of the debtor from his lawyer that the majority fashions.

¶ 25 Justice STEWART concurs in Justice ZIMMERMAN'S concurring and dissenting opinion.