FILED
United States Court of Appeals
Tenth Circuit

**June 29, 2009**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

TELECOM ITALIA S.P.A.,
an Italian corporation,

     Plaintiff - Counter Defendant-
     Appellant,

v.

L-3 COMMUNICATIONS
CORPORATION, a Delaware corporation;
L-3 COMMUNICATIONS SYSTEMS-
WEST, a division or wholly owned
subsidiary of L-3 Communications
Corporation,

     Defendants - Counter Claimants -
     Appellees.

No. 07-4085

(D.C. No. 2:03-CV-00641-DS)

(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO** and **EBEL**, Circuit Judges, and **FRIZZELL**,[**] District Judge.

---

The initial questions presented in this appeal are:  (1) whether an attorney who no

longer represents a potential appellant may obtain a prejudgment writ of attachment in the

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, res judicata and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. 32.1 and 10th Cir. R. 32.1.

[**] The Honorable Gregory K. Frizzell, United States District Judge for the
Northern District of Oklahoma, sitting by designation.

former client's chose in action and file a notice of appeal; and (2) if not, whether Telecom Italia subsequently ratified the previously unauthorized appeal. We answer both questions in the negative and dismiss the appeal.

## I. BACKGROUND

In July of 2003, Telecom Italia S.p.A., an Italian corporation, sued L-3 Communications Corporation and L-3 Communications Systems-West for breach of contract and unjust enrichment in the United States District Court for the District of Utah. The L-3 defendants counterclaimed for breach of contract. The parties filed cross motions for summary judgment, which the district court denied in August, 2005.

On November 16, 2005, Telecom Italia's attorneys at the time, from the firm of Snell & Wilmer, LLP, filed a motion to withdraw as counsel based on irreconcilable differences. At a status conference held that day, movants requested the district court set a new pretrial schedule to allow Telecom Italia to find new counsel. On November 22, 2005, Snell & Wilmer filed a Notice of Attorney Lien in the amount of $46,416.17 for the balance of compensation due from Telecom Italia. On November 29, 2005, the district court granted the motion to withdraw.

On January 11, 2006, Mr. Donald Winder appeared at a status conference and advised the district court that Telecom Italia had not yet retained his services. The court reset the status conference to January 24, 2006. Counsel for the parties appeared on January 24th and submitted an Amended Attorneys' Planning Meeting Report and an Amended Scheduling Order to the Court. Donald J. Winder and David J. Weissman of the firm of Winder &

Haslam, P.C. signed the documents as attorneys for plaintiff Telecom Italia. On March 3, 2006, Winder, Weissman, and the Winder & Haslam firm filed a Motion for Approval to Withdraw as Counsel of Record, citing material and irreconcilable differences and stating that "Telecom Italia has failed to honor its obligations to Winder & Haslam in this matter." On March 7, 2006, the district court granted the motion to withdraw.

On June 5, 2006, Winder & Haslam entered a new appearance in the case. Mr. Winder and Winder & Haslam continued to represent Telecom Italia through the non-jury trial and post-trial briefing. On March 7, 2007, the district court entered its findings of fact and conclusions of law and granted judgment in favor of L-3 on Telecom Italia's claims and in favor of Telecom Italia on L-3's counterclaim.

The deadline for filing a notice of appeal of the judgment was April 6, 2007. That same day, Winder & Haslam filed a complaint in the Third Judicial District Court in and for Salt Lake County, Utah, against Telecom Italia, asserting claims for breach of contract and unjust enrichment in the amount of $50,968.66. In its Complaint, Winder & Haslam stated that it "no longer represents Telecom Italia for the claims and defenses relating to L3 Communications, or in any other legal matters." The firm admitted that Telecom Italia, "through its Italian counsel, informed Winder & Haslam 'you should not spend any time on this.'" However, Winder & Haslam was "aware of no other assets of the [sic] Telecom Italia in the United States other than the *chose in action* against L3 Communications." The firm filed a Motion for Ex Parte Prejudgment Writ of Attachment and alleged in its Complaint that "Winder & Haslam will suffer significant and irreparable injury should an ex parte

prejudgment Writ of Attachment not issue, which would allow the deadline to appeal to pass and Telecom Italia's *chose in action* to lose all value." The state district court granted an ex parte prejudgment writ of attachment giving Winder & Haslam "possession and control of the chose in action" at 2:30 p.m. on April 6, 2007. Ten minutes later, Winder & Haslam filed a Notice of Appeal in federal court as attorneys for Telecom Italia.

One week prior to oral argument, Winder & Haslam filed a Notice signed by Donald J. Winder for Winder & Haslam, and Claudio Coggiatti, counsel in Rome for Telecom Italia. The Notice states:

> Comes now the undersigned counsel and hereby represent to this Court the dispute between Winder & Haslam, P.C. and Telecom Italia, S.p.A. has been settled and compromised and Winder & Haslam, P.C. is authorized to represent the interests of Telecom Italia, S.p.A. in this appeal as its counsel.

L-3 argues that the Notice underscores the fact that Winder & Haslam was not authorized to pursue the appeal in the first instance, and that any later agreement does not cure the prior defect. Winder & Haslam replies that it acted properly in obtaining a prejudgment writ of attachment, and, moreover, Telecom Italia has now ratified the acts of its attorney in pursuing the appeal.

## II. DISCUSSION

It has long been the law of this circuit that an attorney employed to engage in litigation has no right to prosecute an appeal. *Hawkeye-Security Ins. Co. v. Indemnity Ins. Co.*, 260 F.2d 361, 363 (10th Cir. 1958). An attorney's "recommendations with respect to an appeal are entitled to consideration, but whether an appeal shall be taken is a question for

determination by the principal." *Id.* At least three other circuits agree. The Second Circuit holds that, without authorization of the client, an attorney lacks standing to prosecute an appeal. *Soliman v. Ebasco Services Inc.*, 822 F.2d 320, 323 (2d Cir. 1987). The Sixth Circuit has stated the general rule "that an attorney cannot, on his own motion, appeal from a judgment or decree injuriously affecting the interest of his client without said client's consent." *Brown v. Grand Trunk Western R.R. Co.*, 124 F.2d 1016, 1016 (6th Cir. 1941). The Eighth Circuit has held that nonparty attorneys may not appeal, and their clients may not be made appellants against their will. *First Iowa Hydro Elec. Coop. v. Iowa-Illinois Gas and Elec. Co.*, 245 F.2d 630, 631 (8th Cir. 1957); *see also In re Leaf Tobacco Bd. of Trade of N.Y.*, 222 U.S. 578, 581 (1911) ("One who is not a party to a record and judgment is not entitled to appeal therefrom.").

The attorneys for Winder & Haslam admitted in sworn filings – which they filed with the Utah state court *before* they filed notice of the federal appeal – that they no longer represented Telecom Italia and that Telecom Italia's Italian counsel had advised them not to spend any time on the appeal. They do not contend they had independent authority (other than the prejudgment writ of attachment) to appeal the judgment against Telecom Italia. Neither do they argue that their contract of employment operated to transfer or assign a sufficient interest in the subject matter of the suit that they might prosecute the appeal, notwithstanding the refusal of the client. Rather, they argue they had a property right under Utah law to prosecute the appeal by reason of the prejudgment writ of attachment obtained in state court.

In Utah, a legal cause of action is a "chose in action" which "may ordinarily be acquired by a creditor through attachment and execution." *Snow, Nuffer, Engstrom & Drake v. Tanasse*, 980 P.2d 208, 210 (Utah 1999); *Applied Med. Technologies, Inc. v. Eames*, 44 P.3d 699, 701 (Utah 2002). In *Tanasse*, a law firm obtained a default judgment against a former client in the firm's action to collect on a promissory note for attorney fees. The client then sued the firm for legal malpractice. The firm sought to recover on its default judgment by executing on the client's interest in the legal malpractice action, which it purchased for $10,000 at a sheriff's sale. The Utah Supreme Court concluded that a legal malpractice action is subject to execution and can generally be purchased by a judgment creditor, but held that the law firm's purchase of the legal malpractice action was against the public policy of Utah because: (1) the purchase denied the client the right to a trial on his legal malpractice claim; and (2) the appropriate value of the legal malpractice claim would never be fairly determined. *Tanasse,* 980 P.2d at 210. The Utah Supreme Court recognized that allowing lawyers and law firms to execute on legal malpractice actions pending against them might significantly undermine the public trust in the legal profession and compromise the attorney/client relationship. *Id.* at 212.

A lawyer's acquisition by prejudgment attachment of a former client's cause of action in order to allow the lawyer to appeal an adverse decision for the purpose of pursuing the lawyer's interest in collecting attorney fees creates at least two problems. First, it has the obvious effect of denying the former client its right to decide not to appeal. Second, it has the effect of generating appeals in which a primary incentive is the satisfaction of accrued

-6-

attorney fees owed to attorneys who have proceeded at their own risk in the trial court without payment of fees. Allowing lawyers and law firms to obtain prejudgment writs of attachment in actions on which they have worked would undermine the public trust in the legal profession and compromise the attorney/client relationship.

Because Utah has not directly addressed the precise issue of Utah property law presented here, we must predict how Utah's highest court would rule. *FDIC v. Schuchmann*, 235 F.3d 1217, 1225 (10th Cir. 2000). In doing so, we are "free to consider all resources available, including decisions of [Utah] courts . . . ." *Id.* (citing *Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir. 1994)). Based upon our reading of the Utah Supreme Court's decision in *Tanasse*, we predict that the Utah Supreme Court would not permit a lawyer to obtain a prejudgment writ of attachment in the former client's cause of action in order to file an unauthorized notice of appeal.[1] Accordingly, Winder & Haslam had no right to prosecute this appeal, under either the law of this circuit or Utah property law.

Finally, Winder & Haslam argues that "Telecom Italia has fully ratified the acts of its attorney in pursuing this appeal." In support, it cites *Bivans v. Utah Lake Land, Water & Power Co.*, 174 P. 1126 (Utah 1918), which stands in part for the proposition that the act of an agent in excess of his authority may be ratified by the principal. *Id.* at 1131-32. Here, however, Winder & Haslam did not act as Telecom Italia's agent or attorney when it filed

---

[1] Here, Winder & Haslam proceeded under a Writ of Attachment. We do not address in this Order and Judgment whether Winder & Haslam would have had sufficient authority to initiate the appeal without the consent of Telecom Italia had it first executed a Writ of Execution against Telecom Italia's cause of action.

the federal Notice of Appeal. Instead, it admittedly operated in its own self-interest, having just presented a sworn affidavit that it "no longer represents Telecom Italia [in the federal case]," and having just obtained "possession and control of the chose in action against L3 Communications Corporation . . . arising out of, or relating to, the matter of Telecom Italia v. L3 Corp., et al, No. 2:03CV00641DS (D. Utah filed July 21, 2003)," as set forth in the Prejudgment Writ of Attachment secured immediately prior to filing the Notice of Appeal. In short, neither *Bivans*, nor *Advanced Restoration, L.L.C. v. Priskos*, 126 P.3d 786, 794 (Utah Ct. App. 2005), cited for the proposition that ratification of an agent's acts relates back to the time the unauthorized act occurred, support ratification in this case, since the unauthorized former attorneys were not acting as agents or attorneys for Telecom Italia.[2]

---

[2] Although not raised in the briefs, the Restatement (Second) of Agency provides, at Section 85, that an act is subject to ratification if the one doing the act *purports* to perform it as the servant of another. While Winder & Haslam acted in its own self-interest in obtaining the writ of attachment (and stated in its reply that it had withdrawn as counsel before obtaining the writ of attachment), the federal docket indicates the firm *purported* to act as attorney for Telecom Italia when it filed the Notice of Appeal. According to the Restatement (Second) of Agency, at Section 90, "[i]f an act to be effective in creating a right against another or to deprive him of a right must be performed before a specific time, an affirmance is not effective against the other unless made before such time." Comment (a) states, in pertinent part, "[t]he bringing of an action, or of an appeal, by a purported agent can not be ratified after the cause of action or right to appeal has been terminated by lapse of time." The Supreme Court applied this rule in *FEC v. NRA Political Victory Fund*, 513 U.S. 88 (1994). In *NRA*, the Court concluded that the Solicitor General's attempted ratification of the Federal Election Commission's unauthorized timely filing of a writ of certiorari did not relate back to the unauthorized filing because the period for filing a petition had expired. Relying on Section 90, the Supreme Court recognized "it is essential that the party ratifying should be able not merely to do the act ratified at the time the act was done, *but also at the time the ratification was made*." *Id.* at 98 (quoting *Cook v. Tullis*, 85 U.S. 332, 338 (1873)). In *NRA*, the Solicitor General's attempted ratification came too late to be effective. Similarly, Telecom Italia's attempted authorization came too late to ratify the Notice of

When an appeal is brought without a client's authorization and over the express statement not to spend any more time on the case, an award of sanctions for frivolous appeal is appropriate. *Soliman*, 822 F.2d at 323. However, because this appeal was brought pursuant to an arguable extension of Utah property law, we decline to consider it frivolous.

## III. CONCLUSION

The appeal is dismissed.

ENTERED FOR THE COURT

Gregory K. Frizzell
District Judge

Appeal.