FILED
United States Court of Appeals
Tenth Circuit

August 11, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RMA VENTURES CALIFORNIA, a
Utah Partnership,

      Plaintiff-Appellant,

v.

      No. 08-4035

SUNAMERICA LIFE INSURANCE
COMPANY and MIDLAND LOAN
SERVICES, INC.,

      Defendants-Appellees.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(Case No. 2:03-CV-00740-TS)**

Ronald W. Ady, Salt Lake City, Utah, for Plaintiff-Appellant.

George W. Pratt (Mark D. Tolman, with him on the briefs), Jones, Waldo, Holbrook
& McDonough, Salt Lake City, Utah for Defendants-Appellees.

Before **LUCERO**, **BALDOCK**, and **McCONNELL**, Circuit Judges.

**BALDOCK**, Circuit Judge.

      This appeal presents us with a most unusual set of facts. Plaintiff RMA

Ventures California originally filed suit against Defendants Sun America Life

Insurance and Midland Loan Services for breach of contract and misrepresentation.

Plaintiff alleged that Defendants failed to implement a required interest rate reduction pursuant to the parties' mortgage agreement. The district court granted summary judgment for Defendants, holding that Plaintiff's voluntary interest payments over a four-year period precluded recovery on its claims. Plaintiff appeals the district court's decision. Defendants contend, however, that we should dismiss Plaintiff's appeal for lack of standing. Defendants' basis for their standing argument is where we are thrown the proverbial "curve ball." Specifically, Defendants argue that Plaintiff no longer owns the legal rights to this cause of action because Defendants purchased them at a public execution sale. Adding to the case's anomalous posture is the fact that the execution sale was meant to satisfy Defendants' award of attorneys' fees—an award based solely on the grant of summary judgment which Plaintiff now attacks on appeal.

We have jurisdiction under 28 U.S.C. § 1291. Acknowledging the unique circumstances involved here, we conclude that Plaintiff lacks standing to pursue this appeal. Moreover, we hold that Plaintiff waived its right to challenge Defendants' purchase of the legal right to this cause of action by failing to appeal the district court's denial of Plaintiff's motion to stay or quash the execution sale. We, therefore, grant Defendants' motion to dismiss this appeal and decline to reach the merits of Plaintiff's breach of contract and misrepresentation claims.

I.

In November 2007, the district court granted summary judgment for

Defendants, dismissing Plaintiff's breach of contract and misrepresentation claims.[1]

Plaintiff subsequently filed a motion requesting a new trial or, in the alternative, that the district court alter or amend its judgment. See Fed. R. Civ. P. 59. The district court denied Plaintiff's motion. Thereafter, Defendants requested attorneys' fees and costs as the prevailing party pursuant to Federal Rule of Civil Procedure 54(d) and California law.[2] Meanwhile, Plaintiff filed a notice of appeal for the district court's grant of summary judgment. In March 2008, over Plaintiff's objection, the district court granted Defendants' motion for attorneys' fees and entered judgment for Defendants in the amount of $87,563.07. Plaintiff did not pay the money judgment, appeal the award, or post a supersedeas bond pending the outcome of the merits appeal.

On April 11, 2008, Defendants obtained a writ of execution from the Clerk of the United States District Court for the District of Utah to enforce payment of the district court's award of attorneys' fees. Two weeks later, in accordance with Utah state procedure, as provided by Federal Rule of Civil Procedure 69(a)(1), the Salt Lake City Deputy Constable issued notice that a public execution sale would be held on May 15, 2008, to raise funds in satisfaction of Defendants' money judgment. The

---

[1] Because we hold that Plaintiff no longer has standing, we do not recount the facts underlying the merits appeal.

[2] Applying Utah's choice-of-law test, the district court determined that California law applied to Plaintiff's breach of contract and misrepresentation claims.

3

property noticed for public sale, however, was Plaintiff's right to the chose in action (*i.e.*, the legal claims) against Defendants in the instant case, including Plaintiff's right to appeal the district court's grant of summary judgment.[3] Counsel for Plaintiff received personal service of the Deputy Constable's notice.

On May 8, 2008, Plaintiff filed a motion to stay or quash the execution sale. Plaintiff raised various jurisdictional and due process arguments before the district court, but never alleged an inability to pay the judgment of attorneys' fees or post a supersedeas bond. The district court denied Plaintiff's motion to stay or quash the execution sale. Plaintiff did not appeal this decision. On May 15, 2008, Defendants, as the highest bidder, purchased Plaintiff's right to this lawsuit for $10,000 at the public execution sale.[4] Defendant subsequently filed its Certificate of Sale with the United States District Court for the District of Utah on May 22, 2008.[5] Plaintiff

---

[3] Unsurprisingly, counsel for Defendants drafted the language in the Deputy Constable's notice.

[4] Declining to attend the sale, Plaintiff made no attempt to bid on its property up for auction.

[5] The Certificate of Sale states that Defendants purchased:

> ALL CHOSES IN ACTION, CLAIMS, COUNTERCLAIMS, CAUSES OF ACTION, AND APPEALS ARISING THEREFROM; RIGHTS TO PAYMENT; AND RIGHTS TO COMPENSATION OF EVERY KIND AND NATURE, WHICH PLAINTIFF RMA VENTURES CALIFORNIA MAY HAVE AGAINST SUNAMERICA LIFE INSURANCE COMPANY AND MIDLAND LOAN SERVICES, INC., INCLUDING BUT NOT LIMITED TO, ALL SUCH CLAIMS

(continued...)

4

nevertheless presses on with this appeal. In response, Defendants argue Plaintiff no longer owns this cause of action, and request that we grant their motion to dismiss. See Fed. R. App. P. 27; 10th Cir. R. 27.2.

## II.

The question of Plaintiff's standing involves a prudential concern. A well-founded prudential-standing limitation is that litigants cannot sue in federal court to enforce the rights of others. See Fed. R. Civ. P. 17(a) (establishing that only the real party in interest is permitted to bring an action in federal court); Rawoof v. Texor Petrol. Co., Inc., 521 F.3d 750, 757 (7th Cir. 2008) (noting that Federal Rule of Civil Procedure 17's real party in interest requirement is essentially the codification of a well-established prudential-standing limitation precluding litigants from enforcing the rights of others); American Immigration Lawyers Ass'n v. Reno, 199 F.3d 1352, 1357 (D.C. Cir. 2000) (recognizing that federal courts have a general prohibition on allowing a litigant to raise another person's legal rights). In other words, a plaintiff's standing is contingent upon the entitlement to enforce an asserted right. See Rawoof, 521 F.3d at 756. At the outset of this litigation, Plaintiff was clearly the real party in interest. The question for us now, however, is whether Defendants

---

[5](...continued)
AND CAUSES OF ACTION AND APPEALS ARISING THEREFROM, FILED IN OR RELATED TO RMA VENTURES CALIFORNIA V. SUNAMERICA LIFE INSURANCE COMPANY, ET AL., CASE NO. 2:03-CV-740.

obtained Plaintiff's rights to this lawsuit, thereby divesting Plaintiff of standing. See Lippoldt v. Cole, 468 F.3d 1204, 1216 (10th Cir. 2006) (noting that a "plaintiff must continue to have standing throughout the litigation").[6] To resolve this issue, we must assess the efficacy of Defendants' actions following summary judgment.

A.

An award of attorneys' fees is "collateral to and separate from the decision on the merits." Budinich v. Becton Dickinson and Co., 486 U.S. 196, 200 (1988) (internal quotations omitted); see also id. ("[I]t is indisputable that a claim for attorney's fees is not part of the merits of the action to which the fees pertain."); Art Janpol Volkswagen, Inc. v. Fiat Motors of North America, Inc., 767 F.2d 690, 697 (10th Cir. 1985) ("[A] judgment on the merits and a subsequent attorneys [sic] fees determination are separate and distinct proceedings."). Thus, a decision on the merits and a decision on attorneys' fees are considered separate, final decisions of the district court, subject to appeal under 28 U.S.C. § 1291. See Budinich, 486 U.S. at 202-03; Art Janpol Volkswagen, 767 F.2d at 697 ("For purposes of appeal, each determination results in a separate and distinct final decision and the filing of a separate notice of appeal is therefore required to obtain review.").

---

[6] We note that Defendants' request that we dismiss this appeal could also be described as a mootness argument. See Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n.22 (1997) ("Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).") (citations and internal quotations omitted).

After summary judgment and the district court's denial of Plaintiff's motion for a new trial or to alter or amend the judgment, Defendants requested attorneys' fees and costs under Federal Rule of Civil Procedure 54(d). Plaintiff objected to Defendants' motion solely on timeliness grounds, arguing that Rule 54(d) requires that a prevailing party file a motion for attorneys' fees within 14 days after entry of the judgment. See Fed. R. Civ. P. 54(d)(2)(B)(I). The district court dismissed Plaintiff's argument, however, holding that the filing period for attorneys' fees was tolled when Plaintiff filed a motion for a new trial or to alter or amend the judgment. Thus, the district court ruled Defendants' motion for attorneys' fees was timely and entered judgment for Defendants in the amount of $87,563.07. As noted, Plaintiff did not appeal this ruling, pay the judgment to Defendants, or post a supersedeas bond pending the outcome of its merits appeal.

B.

Federal courts "have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities." Degen v. United States, 517 U.S. 820, 823 (1996). Because the award of attorneys' fees was a separate and final judgment, the district court here was entitled to take steps necessary to enforce its decision. See Peacock v. Thomas, 516 U.S. 349, 359 (1996) ("To protect and aid the collection of a federal judgment, the Federal Rules of Civil Procedure provide fast and effective mechanisms for execution."); Young v. United States ex. rel. Vuitton et Fils S.A., 481 U.S. 787, 809 (1987) (noting that district

7

courts' ability to enforce their orders and judgments is "a subject that directly concerns the functioning of the Judiciary").

A judgment granting attorneys' fees is "collected or executed in the same manner as any other money judgment." 10 James Wm. Moore et al., Moore's Federal Practice § 54.158[2][a], at 54-262 (3d ed. 2009). Generally, the first step in enforcing a money judgment is to obtain a writ of execution. See id.; Fed. R. Civ. P. 69(a)(1) (noting that "[a] money judgment is enforced by a writ of execution"). Accordingly, Defendants here properly sought—and the district court was within its authority to issue—a writ of execution allowing Defendants to collect on their money judgment. See Palmer v. City of Chicago, 806 F.2d 1316, 1320 (7th Cir. 1986) (acknowledging that district courts have the power to enforce an award of fees even *before* entry of a final judgment).

## C.

Once a federal district court issues a writ of execution, a judgment creditor must follow the procedure on execution "established by the law of the state in which the district court sits." 10 Moore's § 54.158[2][a], at 54-262; see also Fed. R. Civ. P. 69(a)(1) ("The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located . . . ."); 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3012 at 147 (2d ed. 1997) ("The court will look to the state statutes and to state-court decisions construing [the statutes on

8

execution].”).  Thus, as required by Rule 69(a)(1) of the Federal Rules of Civil Procedure, Defendants here turned to the method of execution prescribed under Utah law.[7]

Pursuant to Utah law, Defendants attempted to satisfy their money judgment by purchasing Plaintiff's legal right to pursue this action.  We have found no Utah authority, and Plaintiff cites none, precluding the execution sale of Plaintiff's chose in action against Defendants.  See Andrews v. Roadway Express Inc., 473 F.3d 565, 568 (5th Cir. 2006) (noting that no authority existed to supplant the state law process for the enforcement of a writ of execution).  To the contrary, under Utah Rule of Civil Procedure 69(f), "*all choses in action* may ordinarily be acquired by a creditor through attachment and execution."[8]  Applied Medical Techs., Inc. v Eames, 44 P.3d

---

[7]  Plaintiff contends that 28 U.S.C. § 1291—granting this Court appellate jurisdiction—negates Utah's procedures on execution.  See Fed. R. Civ. P. 69(a) ("The procedure on execution . . . must accord with the procedure of the state where the court is located, *but a federal statute governs to the extent it applies*.") (emphasis added).  Likewise, Plaintiff asserts that even if a judgment is executed, the judgment debtor still retains the right to appeal.  See Strong v. Laubach, 443 F.3d 1297, 1299 (10th Cir. 2006).  Plaintiff's arguments are inapposite.  Defendants do not suggest that (1) our jurisdiction under § 1291 has been removed, or (2) the right to appeal the claims against Defendants no longer exists.  Rather, Defendants argue that they purchased the legal rights to this cause of action and, therefore, Plaintiff is no longer the party entitled to enforce those rights.

[8]  We note that this rule allowing the purchase of a pending chose in action varies from state to state.  Compare Citizens Nat'l Bank v. Dixieland Forest Prods., LLC, 935 So.2d 1004, 1010 (Miss. 2006) ("[A] chose in action is personal property subject to a writ of execution."), and Arbie Mineral Feed Co., Inc. v. Farm Bureau Mut. Ins. Co., 462 N.W.2d 677, 680 (Iowa 1990) ("Iowa . . . has

(continued...)

9

699, 701 (Utah 2002) (emphasis added); see also 13 Moore's § 69.03[2], at 69-11

(noting that courts may look to state law to determine what property is exempt from

execution). In fact, the Utah Supreme Court has expressly held "that a defendant can

purchase claims, *i.e.*, choses in action, pending against itself and then move to

dismiss those claims." Applied Medical Techs., 44 P.3d at 701-02. Thus, at least

on the surface of Defendants' actions, we find no problem in law or fact to negate

Defendants' contention that they obtained the rights to this cause of action, thereby

depriving Plaintiff of standing.

## III.

We recognize the circumstances of this case present a degree of discomfort.

Namely, if Plaintiff's standing were not at issue, and we were to reverse the district

court's grant of summary judgment for Defendants, the corresponding award of

attorneys' fees would also be reversed.[9] See Palmer, 806 F.2d at 1320 ("[W]hen a

judgment on which an award of attorney's fees to the prevailing party is based is

reversed, the award, of course, falls with it."); 15B Wright et al., Federal Practice

---

[8](...continued)
adopted the broad form of statutory execution authorizing levy on choses in action."); with Cal. Civ. Proc. Code § 699.720(a)(3) (prohibiting the purchase of a pending cause of action at an execution sale), and Prodigy Ctrs./Atlanta v. T-C Assocs., 501 S.E.2d 209, 211 n. 3 (Ga. 1998) ("Choses in action are not liable to be seized and sold under execution, unless made so specifically by statute.") (quotations and citation omitted).

[9] We express no opinion on the likelihood of success for Plaintiff's underlying merits appeal.

and Procedure § 3915.6, at 344 ("If no appeal was taken from the award, some means must be found to avoid the unseemly spectacle of enforcing a fee award based on a judgment that has been reversed."). Thus, the $87,563.07 debt owed by Plaintiff—upon which Defendants purchased the rights to this cause of action—would likely be extinguished if we reversed the underlying grant of summary judgment.

Despite such concerns, we are unable to ignore the fact that a public execution sale took place in which Defendants purchased Plaintiff's legal right to continue this appeal for $10,000. See GP Credit Co., LLC v. Orlando Residence, Ltd., 349 F.3d 976, 980 (7th Cir. 2003) (noting that a chose in action is an intangible form of property that can be sold at a foreclosure sale, whereby the purchaser steps into the shoes of the prior owner and becomes the claimant in the suit); Citizens Nat'l Bank v. Dixieland Forest Products, LLC, 935 So.2d 1004, 1013 (Miss. 2006) (holding that the defendant—who was also the plaintiff's judgment creditor after prevailing on a counterclaim—could purchase the plaintiff's pending claims at a public execution sale, thereby becoming the real party in interest); Applied Medical Techs., 44 P.3d at 702-03 (recognizing that "causes of action are regularly sold" and "the sale cuts off the former plaintiff's right to pursue those claims").

More to the point, even if a sufficient ground exists for us to void the sale of this cause of action, Plaintiff waived any such argument by failing to appeal the

11

district court's denial of the motion to stay or quash execution.[10] See Star Ins. Co. v. Risk Marketing Group Inc., 561 F.3d 656, 659 (7th Cir. 2009) (noting that district court orders issued to complete the execution of a final judgment are separate from the original lawsuit and are appealable). Because Plaintiff did not appeal the district court's decision allowing the execution sale to proceed, we will not consider Plaintiff's arguments attacking the sale's lawfulness. See Edmonston v. Sisk, 156 F.2d 300, 302 (10th Cir. 1946) (noting that the validity of a writ of execution cannot be questioned collaterally); 12 Wright et al. Federal Practice and Procedure, § 3013, at 158 ("A writ of execution, once issued, cannot be collaterally attacked."). Accordingly, Defendants are now the true owner's of Plaintiff's lawsuit and may move to dismiss the claims pending before us on appeal. See Citizens Nat'l Bank, 935 So.2d at 1014-15 (dismissing the plaintiff's pending claims against the defendant after the defendant purchased those claims at a sheriff's execution sale); Applied Medical Techs., 44 P.3d at 704 (holding that the defendant could dismiss pending claims against itself after legally purchasing those claims at a sheriff's execution sale).

We note that Plaintiff had numerous opportunities to avoid this outcome. First, Plaintiff could have appealed the award of attorneys' fees. See Citizens Nat'l Bank, 935 So.2d at 1014 (emphasizing that the plaintiff failed to appeal the final

---

[10] We express no opinion on the merits of Plaintiff's various jurisdictional and due process arguments against the execution sale's validity.

12

judgment which served as the basis for the defendant's levy upon the plaintiff's pending chose in action). Second, Plaintiff could have paid the judgment. Third, Plaintiff could have filed a supersedeas bond with the district court pending the outcome of the merits appeal. See Peacock, 516 U.S. at 359 (noting that the Federal Rules of Civil Procedure are designed to secure a judgment creditor's position, ordinarily by a supersedeas bond). As mentioned, Plaintiff has never argued an inability to pay the judgment or post a bond.

For the foregoing reasons, we decline to reach the merits of Plaintiff's appeal, and GRANT Defendants' motion to dismiss.

08-4035, <u>RMA Ventures California v. SunAmerica Life Insurance Co. & Midland Loan Services, Inc.</u>

**LUCERO**, J., concurring.

It is with considerable understatement that the majority acknowledges the "degree of discomfort" presented by this case. While I am constrained to agree that we must dismiss, I am troubled by the manner in which SunAmerica has extinguished RMA's right to a merits appeal.

This case presents a classic chicken-and-egg dilemma: By executing on a subsidiary judgment, SunAmerica has extinguished RMA's right to appeal the very merits determination that served as the predicate for the subsidiary judgment in the first place. If we were to reach the merits and reverse the district court's decision, however, there is little doubt that RMA would be entitled to relief from the subsidiary attorneys' fee judgment. <u>See</u> Fed. R. Civ. P. 60(b)(5) ("On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding . . . (5) [if such judgment] is based on an earlier judgment that has been reversed or vacated."); <u>see also</u> <u>Cal. Med. Ass'n v. Shalala</u>, 207 F.3d 575, 576-78 (9th Cir. 2000) (Rule 60(b)(5) is proper vehicle to set aside award of attorneys' fees after underlying judgment is reversed); 15B Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3915.6, at 344 (3d ed. 1992). RMA will not have the opportunity to pursue its merits appeal and thus no opportunity to file a 60(b)(5) motion.

As a matter of public policy, I doubt the wisdom of a rule that readily places the right to appeal on an auction block. More troublesome still is a rule permitting a defendant to purchase its opponent's appellate rights, thereby extinguishing a plaintiff's claim. "[A defendant] obviously has no intention to litigate a claim against itself." Snow, Nuffer, Engstrom & Drake v. Tanasse, 980 P.2d 208, 211 (Utah 1999). Today's decision thus incentivizes Utah defendants to attempt an end run around merits determinations by purchasing a plaintiff's right to appeal. This incentive is at its zenith when it is most offensive—in those cases in which a defendant believes it would likely lose the merits appeal.

As the Utah Supreme Court has noted, the actual value of a claim purchased by an opponent at auction will never be fairly determined. Id. at 211-12. SunAmerica, of course, hoped to purchase RMA's claim at the lowest possible cost. Being the highest and only bidder, SunAmerica paid $10,000 to extinguish a claim against itself that RMA valued at over $950,000. (Perhaps not coincidentally, the defendant in Tanasse also paid $10,000 to purchase the claim against itself. Id. at 209). Because of our dismissal, we will not know whether SunAmerica paid fair value.

Despite these problems, it appears that Utah law generally authorizes judgment creditors to purchase a chose in action through execution on another judgment. See Applied Med. Techs. v. Eames, 44 P.3d 699, 701-02 (Utah 2002); Tanasse, 980 P.2d at 211. In the absence of a special relationship between the plaintiff and defendant,

2

e.g., attorney/client, a chose in action is an alienable form of property under Utah law. Tanasse, 980 P.2d at 211. But in the typical situation—to the extent any such transaction may be termed "typical"—a judgment creditor executes upon a final judgment in one case to purchase a chose in action in a separate and distinct case. By contrast, SunAmerica purchased the right to appeal in the same case that produced the judgment upon which it executed. Thus this appeal's circularity: We cannot reach the merits of this appeal if we grant the motion to dismiss, but we cannot know whether the motion to dismiss is well-taken unless we reach the merits.

My concerns are eased in this case only because dismissal of this appeal was entirely foreseeable and easily avoided. RMA had abundant notice that SunAmerica intended to purchase RMA's right to appeal. Yet RMA failed to seize any of its numerous opportunities to forestall this outcome: It did not appeal the attorneys' fee judgment; it did not ask us to stay the judgment; it did not pay the judgment; it did not post a supersedeas bond; and it did not appeal the denial of its motion to stay or quash execution. Any one of these procedures would have prevented SunAmerica from purchasing the chose in action and moving to dismiss the appeal. Having failed to take any of these steps, RMA has waived its challenge to the execution sale, and I accordingly join the opinion of my majority colleagues.