[No. 26484. Department Two. April 9, 1937.]

ANTON SWANSON, *Respondent*, v. OLYMPIC PENINSULA MOTOR COACH COMPANY *et al., Appellants.*[1]

*Ballinger, Hutson & Boldt,* for appellants.

*Tucker & Tucker* and *Vanderveer & Bassett,* for respondent.

BEALS, J.—During the month of October, 1934, the plaintiff, Anton Swanson, was employed as a member of the crew of the ferry boat "Quillayute," plying between Port Ludlow and Edmonds. October 4, 1934, while assisting in the unloading of an auto stage operated by defendant Olympic Peninsula Motor Coach Company, plaintiff suffered injuries for which he contended that defendant corporation and Dan Matthews, who was driving the stage, were responsible.

Plaintiff sued the two defendants herein, claiming damages for his injuries, and the action came on regularly for trial during the month of April, 1936, before

[1] Reported in 66 P. (2d) 842.

the superior court for King county, sitting with a jury. At the close of a lengthy trial, the plaintiff moved for a voluntary dismissal, which motion the court granted, the formal judgment having been entered April 16, 1936. This judgment, of course, carried costs against the plaintiff, which were taxed in the sum of $258.50. No appeal was taken from this judgment, and the plaintiff never paid any portion thereof.

During the month of August following, Mr. Swanson instituted, in the superior court for King county, a new action against the same defendants, seeking recovery for the same injuries which had been the basis of the prior action. After the commencement of the second suit, the defendants therein by letter demanded payment of the cost judgment in the prior action, which letter remained unanswered. September 2, 1936, the judgment creditors in the first suit (defendants and appellants herein) caused a writ of execution to be issued upon the judgment. This writ was delivered to the sheriff, who, by direction of the judgment creditors, levied upon plaintiff's cause of action, as set forth in his complaint in the second action, the subject matter of the levy being described in the notice of sale, in the return of sale, and in the conveyance which followed, as follows:

"All rights or interest or claims of Anton Swanson accrued or to accrue under and by virtue of a certain alleged cause or causes of action as set forth in the complaint and pleadings on file in Cause No. 292354 in the Superior Court of the State of Washington in and for King County, wherein Anton Swanson is plaintiff and Olympic Peninsula Motor Coach Co., Inc., a corporation, and Dan Matthews, and each of them, are defendants, under and by virtue of or connected with said cause, or growing out of the same or the matters or things alleged and arising out of an accident occurring on the 4th day of October, 1934, at about 2 o'clock P. M. on said day upon the ferry slip at Port Ludlow, Wash-

ington, at which time and place said Anton Swanson was injured by an automobile stage owned by Olympic Peninsula Motor Coach Co., Inc., a corporation, and driven by Dan Matthews, as more fully set forth in the complaint in Cause No. 292354 in the Superior Court of the State of Washington in and for King County."

The sheriff levied upon the alleged property, according to his return, September 3, 1936, by serving a copy of the notice of levy, together with a copy of the writ of execution, upon Carroll Carter, the then clerk of the superior court of King county, by delivering to Mr. Carter true copies of the writ of execution and notice of levy. The sheriff gave notice that he would sell the personal property described as aforesaid at public auction September 14, 1936, and gave notice of the sale, as prescribed by law. The sheriff's return shows that, at the time and place fixed for the sale, the sheriff sold the property described in the notice to the judgment creditors, who bid therefor the full amount of their judgment. The sheriff then satisfied the judgment, and executed and delivered to the purchasers a bill of sale purporting to convey to them the property described in the notice of sale.

September 18, 1936, Mr. Swanson moved to set aside the execution and vacate the sale. After a hearing, the superior court granted this motion. From the order vacating the sale, the judgment creditors, being the defendants in the action, have appealed.

The sole question presented is whether or not the court erred in entering the order appealed from.

Appellants rely on Rem. Rev. Stat., § 518 [P. C. § 7826-6], which reads as follows: "All property, real and personal, of the judgment debtor, not exempted by law, shall be liable to execution."

Respondent contends that the order was rightly entered on two grounds: First, because there was no

valid service of the notice of levy and execution, the same having been served only on the clerk of the superior court; and second, because a cause of action for personal injuries, based on alleged negligence, is not subject to execution or other process for the satisfaction of a debt.

Rem. Rev. Stat., § 578 [P. C. § 7893], subd. 4, relating to sale of property under execution, provides that "property shall be levied on in like manner and with like effect as similar property is attached." Section 659 [P. C. § 7391], subd. 2, referring to the manner of executing writs of attachment, provides that "personal property, capable of manual delivery, shall be attached by taking into custody." Subd. 3 provides:

"Stock or shares, or interest in stock or shares, of any corporation, association or company, shall be attached by leaving with the president or other head of the same, or the secretary, cashier or managing agent thereof, a copy of the writ, and a notice stating that the stock or interest of the defendant is attached in pursuance of such writ."

The twelfth amendment to our state constitution directs that the legislature shall provide for the election in the several counties of different county officers, including county clerks. Article IV, § 26, of the constitution, provides that "the county clerk shall be, by virtue of his office, clerk of the superior court."

The duties of a county clerk as clerk of the superior court are defined both by statute and court rules. Generally speaking, a clerk of court is an officer of a court of justice, who attends to the clerical portion of its business, and who has custody of its records and files and of its seal. Such an office is essentially ministerial in its nature, and the clerk is neither the court nor a judicial officer. If a clerk of court has in his manual possession personal property, a writ of garnishment

may be directed to him, subsequent proceedings depending upon the facts shown.

In the case at bar, appellants sought to subject respondent's cause of action to levy and sale by serving the execution and levy upon the clerk of the superior court before which respondent's action was pending. The action, of course, was not pending before the clerk, but before the court, the clerk's authority being limited to the custody of the files in the case and such other ministerial acts in connection therewith as the statutes and rules of court required him to perform.

Appellants argue that the service of the execution and levy on the clerk operated "to stay all proceedings in the cause, and to freeze it in the state in which it then is." Appellants also argue that the clerk has dominion over the cause of action, and that "any steps which might further or hinder such cause of action must of necessity originate in and come to the knowledge of the clerk."

This latter argument is clearly unsound. Few steps in a cause of action "originate" in the office of the clerk, and any acts of the court in connection with a pending cause come officially to the knowledge of the clerk only after the court has functioned. The clerk is a mere custodian of files; he has no "dominion" over an action pending before the court of which he is clerk. A cause of action or claim remains in the breast of the plaintiff or claimant, and is no more in the control or dominion of the clerk of the court after a complaint is filed than before. An action may be commenced by the service of a summons long before the complaint or any other papers are filed in the office of the clerk.

■ "The levy of an execution has been defined to be the acts by which an officer sets apart or appropriates, for the purpose of satisfying the command of the writ, a part or the whole of a judgment debtor's property. Its object is to take property into the custody of

the law, and thereby render it liable to the lien of the execution, and put it out of the power of the judgment debtor to divert it to any other use or purpose." 23 C. J. 424, § 206.

Strictly speaking, the service of an execution is distinguishable from the levy thereof, and consists of the communication of the contents to the execution defendant, either actually or constructively. To enable a sheriff to sell property, a valid levy upon the property to be sold is indispensable. When the method of making the levy is prescribed by statute, such method must be followed. In any event, the officer must perform unequivocal acts sufficient to constitute a levy.

At common law, choses in action were not subject to levy under execution, and consequently the common law furnishes no rule for the method of levying upon this species of property. Many states have altered this rule by statute, and in the case of *Johnson v. Dahlquist,* 130 Wash. 29, 225 Pac. 817, this court upheld a levy upon an undetermined and unliquidated claim of indebtedness. Our statute, above quoted, provides a method for attaching shares of corporate stock, but our attention is not called to any provision of our statute setting up any procedure to be followed in levying a writ of attachment upon an unliquidated cause of action.

It is the general rule that, in levying an execution upon personal property, the levying officer shall reduce the property to his possession, or perform some notorious act as nearly equivalent to actual seizure as practicable. *State v. Poor,* 4 Dev. & Bat. Law (N. C.) 384, 34 Am. Dec. 387, which case was quoted with approval by this court in its opinion in *Cupples v. Level,* 54 Wash. 299, 103 Pac. 430, 23 L. R. A. (N. S.) 519. In the case of *Johnson v. Dahlquist, supra,* this court upheld a levy and execution upon an unliquidated in-

debtedness, initiated, as here, by the person against whom the claim was sought to be enforced in an action at law, as against a motion by the plaintiff or claimant to quash the levy. The court, after quoting the statute that all property, real and personal, of the judgment debtor, not exempt by law, should be liable to execution, stated that the statute was all-inclusive, and that a claim of indebtedness is property. The court continued:

"It is said, however, that some property is not subject to execution because the executing officer cannot, by reason of its nature, take it into his manual possession, and that such is the character of this property. The statutes contemplate that, when it is possible to so do, the levying officer must take actual possession of the property levied upon, but it does not follow that a levy is insufficient or cannot be made because of the inability of the executing officer to actually take possession of the thing levied on. All that is necessary under such circumstances is that he take it under his dominion—into his constructive possession—by giving notice to the owner of the property that it is levied upon and will be sold."

In cases in which the method of levy and the giving of notice is provided by statute, compliance with the statutory provisions is sufficient to render a sale valid, whether the judgment debtor has actual notice or not, but where the method of levy is not outlined by law in cases of sales of personal property, such property should be by the sheriff reduced to his possession to the utmost extent of which the property is susceptible.

Doubtless the method followed in the case of *Johnson v. Dahlquist, supra,* and approved by this court, to-wit: the taking of the property, consisting of a cause of action, under the officer's dominion—into his constructive possession—by giving notice to the owner of the property that it is levied upon and will be sold, would be sufficient, as such property, by its nature,

would probably be susceptible of reduction to possession in no other way. The judgment creditor in the case cited could subject his debtor's cause of action to his judgment only by execution and levy. He could not reach the same by garnishment, as he could not garnishee himself.

We are convinced that service of the execution and levy upon the clerk of the court before which respondent's action was pending was wholly insufficient to vest the sheriff with authority to sell the cause of action. The clerk had no possession of, or dominion or control over, that cause of action, and accordingly, by the service upon him, the sheriff obtained no power or authority to sell the same.

Respondent was in possession of his cause of action, and the sheriff could levy execution thereon and reduce the same to his possession only after some notice to respondent.

The conclusion which we have reached upon this phase of the case renders unnecessary any discussion of the other question argued in the briefs, to-wit: whether or not an unliquidated cause of action sounding in tort may be levied upon and sold under execution. Upon this question, we express no opinion.

For the reasons assigned, the order appealed from is affirmed.

STEINERT, C. J., TOLMAN, HOLCOMB, and ROBINSON, JJ., concur.