9 Wn. App. 626 (1973)
513 P.2d 849
WOODY'S OLYMPIA LUMBER, INC., Petitioner,
v.
HENRY V. RONEY et al., Respondents.
No. 2099-1.
The Court of Appeals of Washington, Division One.
August 27, 1973.
*627 Jennings P. Felix & Associates, Jennings P. Felix and Nels A. Hansen, for petitioner.
Martin, Niemi, Burch & Mentele, Ronald H. Mentele, Barnett, Robben, Blauert & Pease, W. Merchant Pease, Donald A. Dawson, Guttormsen, Schofield & Stafford, John A. Hamill, Williams, Lanza, Kastner & Gibbs, and Joseph J. Lanza, for respondents.
SWANSON, C.J.
A question unresolved by existing Washington case law is presented by this litigation: Is an unliquidated tort claim subject to attachment or execution? We granted certiorari to review a trial court order quashing the sheriff's levy of execution upon respondents' tort action entitled Roney v. Brown, King County Cause No. 739825.
Woody's Olympia Lumber, Inc., hereinafter referred to as "Olympia Lumber," obtained a judgment upon an unpaid promissory note against Henry V. Roney and wife, hereinafter referred to as "Roney," for $15,400 plus costs, attorney's fees and interest. Olympia Lumber being unable to obtain satisfaction of its judgment caused a writ of execution to issue, and levied upon Roney's claim for damages in Roney v. Brown, supra, a tort action based upon alleged medical malpractice.
The trial court quashed the levy of execution, and thereafter we issued the writ to review the trial court's order.
Under common law, a writ of execution could not be levied against a mere contractual right or a chose in action. Johnson v. Dahlquist, 130 Wash. 29, 225 P. 817 (1924). As most states have done, we have abrogated that common law by statute. We did so when we enacted what is now RCW 6.04.060: "All property, real and personal, of the judgment debtor, not exempted by law, shall be liable to execution." It cannot be disputed that our state legislature may subject or except any type of property right to a levy of attachment or execution. Olympia Lumber argues that if Roney's claim is "property" contemplated by RCW 6.04.060, and not exempted by law, it is subject to a levy of execution notwithstanding the general rule throughout the country that *628 uncertain or contingent claims cannot be reached by the attachment or garnishment process. 6 Am.Jur.2d Attachment and Garnishment § 127 (1963). Clearly, tort claims fall within such general rules as enunciated in 6 Am.Jur.2d Attachment and Garnishment § 132, at 654 (1963):
Claims for damages in tort, which are necessarily unliquidated before they have been compromised or settled or have been reduced to judgment, have generally been decided to be outside the purview of the attachment or garnishment statutes of the various states, and therefore not subject to such process.
(Footnotes omitted.)
Our Supreme Court, in United Pac. Ins. Co. v. Lundstrom, 77 Wn.2d 162, 459 P.2d 930 (1969), also recognized the general rule that claims for unliquidated damages are not attachable or garnishable, and gave the reason at page 172:
The basis for the rule is that such claims are contingent or uncertain and therefore the amount to become due on the claim cannot be determined until it is reduced to judgment.
As to the availability of the remedy of garnishment to an unliquidated claim, it is well settled in this state that such a claim is not subject to garnishment. Sundberg v. Boeing Airplane Co., 52 Wn.2d 734, 328 P.2d 692 (1958); Bassett v. McCarty, 3 Wn.2d 488, 101 P.2d 575 (1940); Boundary Dam Constructors v. Lawco Contractors, Inc., 9 Wn. App. 21, 510 P.2d 1176 (1973). Even though unliquidated claims are not subject to garnishment, this does not mean such claims may not be reached through other statutory provisions. In Johnson v. Dahlquist, supra, an unliquidated claim for indebtedness was held to be property, and therefore subject to execution. The defendants in Johnson were awarded costs on appeal when a judgment entered against them was reversed. In order to collect their judgment for costs against the plaintiffs, defendants levied on the undetermined and unliquidated claim of indebtedness against themselves. In discussing Rem. Comp. Stat. § 518 which was reenacted *629 verbatim in 1925 and is now codified in RCW 6.04.060, the court described the statute as all-inclusive, and said that there can be no doubt that a claim of indebtedness is property. In responding to the contention that the defendant should not be permitted to levy upon that which they, themselves, owe to the judgment debtor, the court said in Johnson at page 33:
But why not? It is property. It is capable of being transferred. It is capable of being converted into a judgment which is subject to execution. It is an asset of the judgment debtor, and why should not his assets, whatever their nature, be taken to satisfy a judgment? We cannot see any logical reason why such property should not be levied on.
From this, petitioner argues that if an unliquidated and undetermined claim of an indebtedness is property subject to execution, why should an undetermined and unliquidated claim for damages be treated differently simply because it arises from a claim sounding in tort rather than in contract? Olympia Lumber points out that the statutory language of RCW 6.04.060 is without limitation, for it states "all property, real and personal," which must, of necessity, include an alleged medical malpractice claim.
Our Supreme Court, in Swanson v. Olympic Peninsula Motor Coach Co., 190 Wash. 35, 66 P.2d 842 (1937), rejected an opportunity to settle the issue of whether or not an unliquidated claim sounding in tort may be levied upon and sold under execution. It instead decided the case on the procedural ground that insufficient notice had been given to effect constructive possession of the cause of action by the sheriff, and sustained the superior court's order vacating the execution. But there is language in the opinion which indicates that if the proper procedure had been followed, the court would have refused to vacate the execution and recognize an unliquidated tort claim as property. The court, in Swanson, held that service of a copy of the writ of execution upon the clerk of the court in which the claim was pending was an invalid levy. The court said at page 41:

*630 Doubtless the method followed in the case of Johnson v. Dahlquist, supra, and approved by this court, to-wit: the taking of the property, consisting of a cause of action, under the officer's dominion  into his constructive possession  by giving notice to the owner of the property that it is levied upon and will be sold, would be sufficient, as such property, by its nature, would probably be susceptible of reduction to possession in no other way. The judgment creditor in the case cited could subject his debtor's cause of action to his judgment only by execution and levy....
...
Respondent was in possession of his cause of action, and the sheriff could levy execution thereon and reduce the same to his possession only after some notice to respondent.
This holding in the Swanson case prompted the writer of an article on creditors' rights, 36 Wash. L. Rev. 121, 132 n. 31 (1961), to observe:
This appears to the writer as a tacit recognition of the availability of the execution process as to claims sounding in tort.
In the most recent Washington decision discussing this subject, United Pac. Ins. Co. v. Lundstrom, supra, the court noted the holding in Johnson v. Dahlquist, supra, that an unliquidated claim of indebtedness is property and subject to execution, but refused to extend the rule of Johnson to include an attachment and subsequent levy upon a cause of action which remained uncertain and contingent even after it was reduced to judgment. In the United Pac. Ins. Co. case, the insurance company brought suit and recovered judgment against both defendants Lundstrom and Milmanco Corporation. The insurance company levied a writ of attachment upon Lundstrom's cause of action against Milmanco before the trial court entered judgment upon the claim. Thereafter, the lien of United Pacific's writ of attachment was specifically reserved in the judgment. The sheriff's subsequent attempt to comply with the order of sale was quashed by the superior court.
In discussing the validity of the attachment and the attempted *631 execution sale, the court distinguished the holding in Johnson v. Dahlquist, supra, and stated at page 172:
At the time of this attachment it was uncertain whether a sum of money would ever be due from Milmanco to Lundstrom.... But whereas in Johnson the value of the attached cause of action would be mathematically ascertainable when judgment was rendered on the claim, that was not true here. The uncertainty and contingency still existed after Lundstrom had been awarded a judgment. The value of his judgment could not be mathematically calculated with any degree of certainty before something else happened. Lundstrom's judgment against Milmanco was only for such sums as he should thereafter pay on United's judgment against him. If he paid nothing, his judgment was worthless.
On the basis of the judgment itself being uncertain, which did not remove the uncertainty and contingency which existed at the time of the attachment, the court held the claim could not be legally attached at the time of the issuance of the writ. Therefore, if an undetermined and contingent claim cannot be rendered certain or mathematically ascertainable when judgment is rendered on the claim, it is not subject to attachment. However, in the case at bench, it cannot be said that respondent Roney's claim for damages will not be fixed with certainty when judgment is rendered on the claim.
In a well reasoned opinion by the California Court of Appeals, Everts v. Will S. Fawcett Co., 24 Cal. App.2d 213, 74 P.2d 815 (1937), the execution sale of unliquidated tort claims was upheld. In that case, the judgment creditor caused writs of execution to issue and levied upon four causes of action based upon unliquidated claims for damages for fraud which were later sold at execution sale. The California court considered a statute similar to RCW 6.04.060, and held that unliquidated tort claims were things and actions and, consequently, personal property subject to execution sale. The court rejected the argument that because unliquidated claims for damages in tort could not be reached through the garnishment process, they may not be *632 reached through other statutory provisions. The court said at page 217:
We are cited to no cases in this state which support the contention that these causes of action could not be sold at execution sale under our statutes. The respondents argue that to permit such causes of action to be thus sold would lead to the conversion of valuable choses in action into collusive suits and would "enable powerful banking organizations to acquire and assert legitimate claims presented in good faith by litigants who own and honestly assert tort causes of action".
The court answered this contention by stating:
If any such evils arise they may be expected to receive proper legislative consideration, and in the meantime we are governed by the statutes now in force. We conclude from these statutes that the causes of action in question were subject to sale under execution.
Contra, Coty v. Cogswell, 100 Mont. 496, 50 P.2d 249 (1935);[1]Haines v. Public Fin. Corp., 7 Ohio App.2d 89, 218 N.E.2d 727 (1966).[2]
*633 [1, 2] Roney argues that one of the tests to be employed in determining whether a cause of action or claim for damages is "property," and therefore subject to attachment or execution, is its assignability. He contends that his claim alleging medical malpractice is not assignable, and points to the rule of Harvey v. Cleman, 65 Wn.2d 853, 855, 400 P.2d 87 (1965), in determining assignability:
The test of assignability in this jurisdiction is whether the cause of action survives to the personal representative of the assignor. If it does, the cause of action is assignable.
The legislature, by RCW 4.20.046, provided that all causes of action survive except "damages for pain and suffering ..." Therefore, Roney argues that because his claim is primarily for pain and suffering it does not survive and is not assignable; consequently, it is not subject to attachment or execution. We recognize that a distinction may be made between tort claims that survive and those that do not, and between tort claims that go primarily to the person rather than to property, but Roney cites no authority for his assertion, and we are not persuaded by his argument. Assignability affects the value of a property right, but its absence does not extinguish it. It is still property. Roney's claim, though undetermined and unliquidated, is capable of being converted into a judgment, and we believe it constitutes "property" within the contemplation of RCW 6.04.060. There has been a steady trend of the law to make all species of property freely alienable and subject to the demands of the owner's creditors. McNeilly v. Furman, 47 Del. 565, 95 A.2d 267, 35 A.L.R.2d 1436 (1953). Our statute is sufficiently broad to include unliquidated tort claims even if of dubious value, and we see no reason to limit by judicial construction or prohibit the judicial process of attachment or execution by excluding such claims. If such a step is to be taken, it is for the legislature and not for the courts. Further, we see no rational distinction between an unliquidated claim for indebtedness, which our court in Johnson v. Dahlquist, 130 Wash. 29, 225 P. 817 (1924), *634 determined to constitute property, and an unliquidated claim of damages for personal injuries based upon negligence.
The order quashing the writ of execution is vacated.
FARRIS and JAMES, JJ., concur.
NOTES
[1] The Supreme Court of Montana, in Coty v. Cogswell, supra, took a contrary view in rejecting the right of a judgment creditor to attach an unliquidated claim seeking damages for personal injuries arising out of an automobile collision. But the Montana attachment statute under consideration in Coty differs substantially from our execution statute, RCW 6.04.060. The court in Coty stated at page 500:

Section 9267, Revised Codes of 1921, provides that "all persons having in their possession, or under their control, any credits or other personal property belonging to the defendant, or owing any debts to the defendant at the time of service upon them of a copy of the writ and notice, shall be, unless such property be delivered up or transferred, or such debts be paid to the sheriff, liable to the plaintiff for the amount of such credits, property, or debts, until the attachment be discharged, or any judgment recovered by him be satisfied."
[2] The Ohio Court of Appeals, in Haines v. Public Fin. Corp., supra, held that a tort action against the finance company for invasion of privacy was not subject to attachment under Ohio law. However, it must also be noted that the Ohio statute says that "property" may be attached, and the court defined such property as something other than a chose in action, something that can be valued and appraised, or existing in a way that value can be determined as of the time of the attachment.