## NOTICE:   SLIP OPINION
## (not the court's final written decision)

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports.

FILED

OCT 2 6 2017

WASHINGTON STATE
SUPREME COURT

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

In the Matter of the Recall of )  No. 94788-1
)
JANELLE RIDDLE, )  ORDER AMENDING
)  OPINION
Yakima County Clerk. )
_____)

It is hereby ordered that the following change be made to the unanimous opinion of Yu, J., in the above entitled case (page and line references are to the slip opinion filed on October 26, 2017):

On page 1, at line 10, the following language is deleted: ", defeating incumbent Kim Eaton".

DATED this 26th day of October, 2017.

Fairhurst, CJ.
                                  Chief Justice

APPROVED:

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE OCT 2 6 2017

CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on October 26, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| In the Matter of the Recall of | ) | No. 94788-1 |
|  | ) |  |
| JANELLE RIDDLE, | ) | EN BANC |
|  | ) |  |
| Yakima County Clerk. | ) | Filed: OCT 2 6 2017 |

YU, J. — Yakima County Clerk Janelle Riddle appeals the trial court's ruling that five out of the six recall charges filed against her are factually and legally sufficient. We granted the recall petitioners' motion for accelerated review and now affirm the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

Riddle was elected on November 4, 2014, defeating incumbent Kim Eaton. Riddle executed her oath of office on December 29 and began her term on January 1, 2015. Riddle's term in office has been a challenging one.

Riddle attributes many of the challenges she has faced to Yakima County's early adoption of new case management software called Odyssey. Yakima County had received approval to be "an early adopter site" for Odyssey about a year before

Riddle's election. YAKIMA COUNTY SUPERIOR COURT LOCAL ADMINISTRATIVE RULE (LAR) 2.1. Odyssey was deemed necessary to replace Yakima's "obsolete" calendaring software, which posed "a threat to the [Superior] Court's continuing ability to operate." *Id.* Odyssey was implemented in November 2015, nearly one year after Riddle took office. Although most of the early adopter sites for Odyssey encountered some difficulties in its implementation, the Yakima County Clerk's Office had the most difficulty making the transition.

Another source of difficulty for Riddle has been her ongoing disagreement with other Yakima County officials, particularly the superior court judges, about the scope of Riddle's powers and duties as clerk. This disagreement prompted the Yakima County Superior Court to pass five new local administrative rules regarding the powers and duties of the clerk on an emergency basis pursuant to GR 7(e). LAR 3, 7, 8, 9, 10. Riddle contends that those rules are void because they conflict with state law and violate separation-of-powers principles.

In May 2017, about two and a half years into Riddle's four-year term, the recall petitioners (attorneys Rickey Kimbrough, Robert Young, Bruce Smith, and Richard Johnson) filed a statement of charges against Riddle. Briefly, the charges allege that Riddle failed to transmit court orders as required by statute, refused to perform in-court duties and threatened to shut down the Yakima County Superior

2

Court, and failed to properly collect and account for clerk's office revenue. The facts underlying each charge are discussed as relevant to the analysis below.

As required by RCW 29A.56.130, the Yakima County Prosecuting Attorney's Office drafted a ballot synopsis based on the charges and petitioned for a ruling on the sufficiency of the charges and the ballot synopsis in Yakima County Superior Court. The court ruled that five of the six charges were factually and legally sufficient and approved an amended ballot synopsis that states, in full, as follows:

## BALLOT SYNOPSIS

The charges that Yakima County Clerk, Janelle Riddle, committed misfeasance, malfeasance and/or violated her oath of office allege she:

1. Failed, between October 2015 and November 2016, to properly and timely transmit to [the Department of Social and Health Services], Division of Child Support, orders of child support entered in Yakima County Superior Court, resulting in substantial loss of revenue to the County and harm to parents;

2. Failed, between February 2016 and October 2016 to properly discharge her duty to timely transmit to law enforcement agencies restraining orders entered in Yakima County Superior Court;

3. Refused and/or failed in July 2016 to perform in-court duties required by law, and threatened to shut down or close the Yakima County Superior Court and Yakima County Clerk's Office;

4. Failed, between January 2015 and December 2016 to properly maintain account of the monies received by the Yakima County Clerk's Office; and

3

5. Failed, between May 2016 and October 2016 to enact procedures to collect for jury services rendered to other courts resulting in a delay of revenue.

Should Janelle Riddle be recalled from office based on these charges?

Clerk's Papers (CP) at 2442.

Riddle appealed the sufficiency of those five charges to this court pursuant to RCW 29A.56.270. The insufficient charge is not at issue. We affirm the trial court and hold that all five of the remaining charges in the amended ballot synopsis are factually and legally sufficient and the recall proceeding may move forward.

## ISSUES

A.    Are the five remaining charges factually and legally sufficient to move forward in accordance with RCW 29A.56.140?

B.    Is the amended ballot synopsis adequate?

## BACKGROUND LAW AND STANDARD OF REVIEW

Washington voters have a constitutional right to recall any nonjudicial elected official who "has committed some act or acts of malfeasance or misfeasance while in office, or who has violated his[ or her] oath of office." CONST. art. I, § 33. The statutes governing recall proceedings are RCW 29A.56.110-.270. *See* CONST. art. I, § 34.

The courts act solely as gatekeepers in the recall process. Our role is "to ensure that the recall process is not used to harass public officials by subjecting

4

them to frivolous or unsubstantiated charges." *In re Recall of West*, 155 Wn.2d 659, 662, 121 P.3d 1190 (2005). It is up to the voters to determine whether the charges are true and, if so, whether they actually justify recalling the official. Courts therefore take all factual allegations as true. *In re Recall of Boldt*, 187 Wn.2d 542, 549, 386 P.3d 1104 (2017). "'The sufficiency of a recall petition is reviewed de novo.'" *Id.* (quoting *In re Recall of Wasson,* 149 Wn.2d 787, 791, 72 P.3d 170 (2003)).

A charge is factually sufficient where the alleged facts, taken as a whole, "'identify to the electors and to the official being recalled acts or failure to act which without justification would constitute a prima facie showing of misfeasance, malfeasance, or a violation of the oath of office.'" *Id.* at 548 (quoting *Chandler v. Otto*, 103 Wn.2d 268, 274, 693 P.2d 71 (1984)). A charge "is legally sufficient if it 'state[s] with specificity substantial conduct clearly amounting to misfeasance, malfeasance or violation of the oath of office.'" *Id.* at 549 (alteration in original) (quoting *Chandler*, 103 Wn.2d at 274). "Misfeasance," "malfeasance" and "violation of the oath of office" are statutorily defined:

> (1) "Misfeasance" or "malfeasance" in office means any wrongful conduct that affects, interrupts, or interferes with the performance of official duty;
>
> (a) Additionally, "misfeasance" in office means the performance of a duty in an improper manner; and

5

*In re Recall of Riddle*, No. 94788-1

(b) Additionally, "malfeasance" in office means the commission of an unlawful act;

(2) "Violation of the oath of office" means the neglect or knowing failure by an elective public officer to perform faithfully a duty imposed by law.

RCW 29A.56.110. When applying these statutory definitions, we have held that "[a]n appropriate exercise of discretion does not constitute grounds for recall." *Boldt*, 187 Wn.2d at 549. Moreover, where the charge alleges the commission of an unlawful act, "the petitioner must show facts indicating the official had knowledge of and intent to commit an unlawful act." *Id.*

## ANALYSIS

Riddle's contentions reflect a misunderstanding of the respective roles of the courts and the voters in the recall process. We affirm the trial court's ruling that each charge is factually and legally sufficient to move on to the signature-gathering phase of the recall proceeding. We decline to address Riddle's challenge to the amended ballot synopsis.

A.      Factual and legal sufficiency of the charges

Riddle challenges the factual and legal sufficiency of each of the five remaining charges individually, and further raises a general challenge to the recall proceeding as a whole. We affirm the trial court.

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

1.     Charge One: failure to transmit child support orders

Charge One alleges that for over a year, Riddle failed to transmit child support orders entered by the Yakima County Superior Court to the appropriate agency as required by statute. We affirm the trial court's ruling that Charge One is factually and legally sufficient.

    a.     Background information

Superior court clerks must transmit child support orders to the Division of Child Support (DCS) "within five days of entry." RCW 26.23.033(2).[1] If the Yakima County Clerk complies with this duty, then DCS funds a portion of the clerk's office budget; if not, then DCS must withhold the anticipated funding. CP at 1153, 1252, 1281. Charge One alleges that Riddle "[f]ailed, between October 2015 and November 2016, to properly and timely transmit to [the Department of Social and Health Services, DCS], orders of child support entered in Yakima County Superior Court, resulting in substantial loss of revenue to the County and harm to parents." *Id.* at 2442.

DCS first became aware that there was a problem with transmitting support orders in January 2016. The problem dated back to November, when Odyssey was first implemented. On January 11, DCS e-mailed Riddle to notify her that there

---

[1] DCS maintains a statewide registry of child support orders to promote uniform recordkeeping and to help custodial parents and their children obtain support payments. RCW 26.23.010, .033(1).

*In re Recall of Riddle*, No. 94788-1

appeared to be a problem and to ask if she knew what was causing it. *Id.* at 1283.

The next day, DCS e-mailed again to say it had confirmed that there was a

problem; it sent a list of cases in which it knew that support orders had not been

transmitted and asked Riddle to investigate and resolve the issues. *Id.* at 1289.

Riddle responded that "[a]s an 'early adopter' of this state courts' program

[Odyssey], we are just to the point of finishing up the workflow process for those

documents to automatically be emailed to the designated staff that [the Washington

State Support Registry] would like to receive them." *Id.* at 1283. She assured

DCS that her office was "working diligently to get this workflow in place," and

proposed that in the interim, she could "ask staff to email them directly" to DCS.

*Id.*

However, neither the automatic workflow process nor the direct e-mails

from staff had resolved the problem by February 3, so DCS e-mailed again,

expressing its concerns more forcefully:

> While we do understand the difficulties often encountered when
> switching to a new system, there must be a 'workaround' in place so
> that you can continue to transmit orders to [the Washington State
> Support Registry] during this transition period.
>     . . . .
>     Please let [the supervisor from the intake unit] know the status
> of the automated transmission of orders under the new Odyssey
> system and also <u>when</u> all of the orders NOT previously sent since
> November 1, 2015 will be transmitted.

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

> Also note that the monthly reimbursements you receive from DCS are payment for the transmission of orders and copy requests. Since orders are not being transmitted I will likely need to withhold future reimbursements until all of the past orders are received and you are sending orders regularly again.

*Id.* at 1282. DCS's e-mails always included offers to help Riddle resolve the issue.

In February 2016, the issue also came to the attention of the court services director for Yakima County. *Id.* at 1153. Three people had called her to report that they had not received support payments because the support orders in their cases had not been transmitted to DCS, and the clerk's office had not returned their repeated phone calls. *Id.* at 1153-54. The court services director confirmed that both the prosecutor's office and DCS were experiencing similar problems, and she then had her staff prepare a report of the missing orders. *Id.* at 1154-55.

The report stated that only 44.7 percent of the child support orders entered in family law cases between November 1, 2015 and February 17, 2016, were ever received by DCS. *Id.* at 1340. A follow-up report revealed that between February 18 and May 31, 2016, the number of orders transmitted dropped to 33.3 percent. *Id.* at 1330. By August 2016, 74 percent of orders were transmitted on time, *id.* at 1125, and as of May 2, 2017, the court services director stated that "it appears that the child support orders are now being sent to [DCS]." *Id.* at 1156. However, as a result of so many orders being transmitted late or not at all, DCS withheld over $200,000 in anticipated funding for the clerk's office. *Id.* at 1154.

9

*In re Recall of Riddle*, No. 94788-1

   b.  Factual sufficiency

  Riddle contends that Charge One is factually insufficient because there is no evidence that she intended to violate the law. Br. of Appellant at 17. However, Riddle misreads the intent requirement and the showing necessary to satisfy it.[2]

  Riddle is correct that in recall proceedings "[w]here commission of an unlawful act is alleged, the petitioner must show facts indicating the official had knowledge of and intent to commit an unlawful act." *Boldt*, 187 Wn.2d at 549 (citing *In re Recall of Telford*, 166 Wn.2d 148, 158, 206 P.3d 1248 (2009)). The primary purpose of the intent requirement is to shield elected officials from recall where their actions, though not statutorily compliant, are attributable to a "simple mistake." *In re Recall of Heiberg*, 171 Wn.2d 771, 779, 257 P.3d 565 (2011) (mayor purchased truck under honest but erroneous belief that reserve fund money could be used for that purpose and later reimbursed the town when he learned of his mistake).

  The facts in this case, however, allege that Riddle knowingly failed to perform a statutorily mandated duty in the majority of cases for eight months (from

---

  [2] Riddle also contends that Charge One is factually insufficient because it "fails to mention that the problem with forwarding child support orders has been fixed by Ms. Riddle." Br. of Appellant at 18. However, Charge One provides a start and end date for the period at issue, clearly implying that the problem has been resolved. CP at 2442. If Riddle disagrees about the precise date on which the problem was resolved or who should be given credit for resolving it, she must take her case to the voters, as we are in no position to resolve that factual dispute.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

the time she was first notified of the problem in January 2016 until it was arguably mostly resolved in August 2016). The facts also allege that other counties that had been early Odyssey adopters faced some challenges, but none of them had nearly as many problems, nor did their problems persist for nearly as long. And in light of Riddle's refusal to accept suggestions or assistance over this extended period of time, a voter might also rationally infer that Riddle acted willfully and with unreasonable indifference to the consequences of her failure to transmit child support orders. *See In re Recall of Sandhaus*, 134 Wn.2d 662, 671, 953 P.2d 82 (1998) ("[W]ilfullness can probably be found in evidence showing that Sandhaus knew he was overspending and did so even after the Board and the auditor warned him against doing so."). The factual allegations in this case clearly allege much more than a simple mistake.

Riddle, however, contends that the recall petitioners must have evidence that she had an unlawful purpose in failing to transmit court orders, such as an intent to deprive custodial parents of child support payments. It is true that we have required such evidence where the elected official's actions would have been lawful but for the official's alleged unlawful purpose. *See Boldt*, 187 Wn.2d at 551 (charge that officials held a closed meeting for the purpose of taking action outside the view of the public in violation of the Open Public Meetings Act of 1971, chapter 42.30 RCW); *In re Recall of Carkeek*, 156 Wn.2d 469, 472-73, 128 P.3d

11

1231 (2006) (charge that official filed antiharassment order for the purpose of keeping constituents from attending public meetings). In such cases, a showing of unlawful purpose is necessary to establish an unlawful act constituting malfeasance.

This case is different. The factual allegations here, if believed, establish a prima facie showing of "the *neglect* or *knowing failure* by an elective public officer to perform *faithfully* a duty imposed by law," that is, a violation of the oath of office. RCW 29A.56.110(2) (emphasis added). We therefore hold that Charge One is factually sufficient. *Boldt*, 187 Wn.2d at 548.

c.    Legal sufficiency

Riddle argues that Charge One is not legally sufficient because she did not engage in any wrongful conduct and the problems with transmitting child support orders were not her fault. We reject these arguments.

First, relying on the same arguments she raises as to factual sufficiency, Riddle argues that her extended failure to transmit child support orders was not wrongful at all. We reject this argument for the reasons stated above in the discussion of factual sufficiency.

Second, as Riddle correctly notes, "[a]n appropriate exercise of discretion does not constitute grounds for recall." *Id.* at 549. She is also correct that becoming an early adopter of Odyssey was an appropriate exercise of discretion,

12

which she was not involved in. However, Charge One does not seek to recall Riddle for the early adoption of Odyssey, but for Riddle's knowing failure to perform faithfully her mandatory duties.

Riddle may intend to argue that the early adoption of Odyssey made it impossible for her to fulfill her duties, which could preclude legal sufficiency. *See Greco v. Parsons*, 105 Wn.2d 669, 673, 717 P.2d 1368 (1986) ("Greco's failure to comply with an ordinance, because it was impossible to comply, amounts to a legally cognizable justification for his failure. Such justification defeats the legal sufficiency of the recall petition."). However, impossibility in this case is, at best, disputed.

Riddle apparently attributes all the problems to Yakima's early adoption of Odyssey, but the facts alleged by the recall petitioners suggest that other early adopters had fewer problems, or no problems at all. *Compare* Br. of Appellant at 21-22, *with* CP at 1155-56, 1298, 1300, 1302. Moreover, the office manager for Riddle's predecessor stated that "[t]he process before Odyssey was to fax all no contact/protection orders to a designated law enforcement agency, as stated in the order. It was to be done immediately after court, so law enforcement could serve the paperwork and enter it into their system." CP at 2253. There is no indication Riddle could not have done the same with child support orders until Odyssey was functioning properly. We must take the facts alleged by the recall petitioners as

13

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

true and assume that the early adoption of Odyssey did not make it impossible for Riddle to perform her duties.

Therefore, we affirm the trial court's ruling that Charge One is legally sufficient, as well as factually sufficient.

2. Charge Two: failure to transmit restraining orders

Charge Two is very similar to Charge One except that Charge Two deals with restraining orders instead of child support orders. Riddle's challenges to the factual and legal sufficiency of Charge Two are identical to her challenges to Charge One. Because the allegations underlying each charge are not materially different, we affirm the trial court's ruling that Charge Two is factually and legally sufficient.

a. Background

The superior court clerk must transmit restraining orders entered in a variety of cases to law enforcement "on or before the next judicial day." RCW 7.92.180(1) (civil antistalking actions); RCW 10.99.040(6) (pending criminal actions for domestic violence offenses); RCW 26.09.050(3) (final dissolution decrees), .060(8) (pending dissolution actions); RCW 26.26.130(11) (parentage actions); RCW 26.50.100(1) (domestic violence protection orders). Charge Two alleges that Riddle "[f]ailed, between February 2016 and October 2016 to properly

14

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

discharge her duty to timely transmit to law enforcement agencies restraining orders entered in Yakima County Superior Court." CP at 2442.

On July 25, 2016, the Yakima County court services director learned that a family member of one of her staff could not get law enforcement assistance in enforcing valid restraining orders because the orders had not been transmitted to law enforcement. Hoping that this was an isolated incident, the court services director ordered reports about missing restraining orders. The reports revealed that between June 1 and July 27, 2016, 40 percent of criminal no-contact orders were not received by law enforcement. *Id.* at 1731. Between June 1 and July 21, 2016, 71 percent of domestic restraining orders were not received. *Id.* at 1735. A follow-up report spanning January through August 2016 revealed a pattern of failure to transmit restraining orders. *Id.* at 1159-60, 1788.

When the court services director sent these reports to Riddle and asked if they could meet to discuss and sort out the problem, Riddle responded that her office was running its own reports and did not need assistance. *Id.* at 1736, 1738. Although the time period referenced in Charge Two ends in October 2016, the problem was not in fact fully resolved by then. *Id.* at 1751-55. We do not know what happened after October 2016.

b.      Factual and legal sufficiency

Riddle argues that there is no evidence that she intended to violate the law, that she did not engage in any substantial misconduct, and that the problems were caused by Yakima's early adoption of Odyssey.  She does not distinguish the arguments pertaining to Charge Two from those pertaining to Charge One.  We therefore reject those arguments for the reasons discussed in the above analysis of Charge One and affirm the trial court's ruling that Charge Two is sufficient.

3.      Charge Three: refusal to perform in-court duties

There have been significant tensions between Riddle and the Yakima County Superior Court over their respective powers and duties.  Charge Three alleges that Riddle "[r]efused and/or failed in July 2016 to perform in-court duties required by law, and threatened to shut down or close the Yakima County Superior Court and Yakima County Clerk's Office." *Id.* at 2442.  We affirm the trial court's ruling that this charge is factually and legally sufficient.

a.      Background

Riddle came into the position of clerk with very different ideas about her powers and duties than those held by the Yakima County Superior Court and the Board of Yakima County Commissioners.  Riddle felt it was inappropriate for her deputy clerks to perform in-court tasks they had done in the past, such as operating the electronic recording equipment that had replaced most of the in-person court

16

reporters in Yakima and providing copies of those recordings as requested. The clerk's office had been providing such services to the Yakima County Superior Court for years in exchange for extra staff and additional funding for the clerk's office, while the staff and budget for the court were reduced accordingly. *Id.* at 1177-78.

Although Riddle agreed before she took office that she would continue that arrangement, after taking her oath of office she stated her intent to withdraw from it. *E.g., id.* at 1168. After a tense meeting between Riddle and the superior court judges on March 30, 2015, the Yakima County Superior Court adopted LAR 3, which "describes actual current courtroom procedures and the responsibilities of the Clerk of the Court while in court. The purpose of the rule is to maintain and continue current practice without interruption." LAR 3 was adopted on an emergency basis effective April 15, 2015, and on a permanent basis effective September 1, 2015. However, despite the passage of LAR 3, Riddle again asserted that her deputy clerks would stop providing the in-court services specified in the rule. *E.g., id.* at 1223.

The court services director became sufficiently concerned about Riddle's assertions, and she brought the issue to the Yakima County Law and Justice Committee, which caused the Board of Yakima County Commissioners to appoint an independent review panel in March 2016. The panel's initial report, issued on

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

May 31, 2016, noted an attorney general opinion suggesting that the remedy for a clerk who refuses to follow a local court rule may be contempt proceedings.

On July 3, 2016, Riddle responded to the panel's report with a written document that opened, "Dear Family, Friends and Supporters."[3] *Id.* at 2113. As relevant to Charge Three, Riddle's document included the following language:

> I have been threatened with contempt and going to jail if I don't do what the County Commissioners and Court want me to do. Therefore, I have no choice other than to prepare for this possibility by sending a Clerk's Directive to the Prosecuting Attorney. I don't believe they realize what the severity of the consequences will be. I would have no choice other than to revoke the deputization[ ]of all my deputies (staff) and they would not be able to perform my duties in my absence which would close the Clerk's Office. The Courts will not be able to hear cases without a Clerk present so the Courts will shut down. The jail will be overflowing because the Prosecutor will have no way to prosecute individuals. I would hope they know these consequences and will choose <u>not to</u> shut down our judicial system by such an action. I would be given no choice as I must ensure my mandated responsibilities are being met according to the law.

*Id.* at 2117. The disputes leading up to this document and the document itself are the basis for Charge Three.

### b. Factual sufficiency

First, Riddle contends that Charge Three is factually insufficient because there is no proof that she actually "failed" to perform any in-court duties. However, Charge Three alleges that she "[r]efused *and/or* failed" to perform those

---

[3] The document is dated "July 3, 2015," but the parties agree that the document was actually written in 2016. CP at 2113.

duties. *Id.* at 2442 (emphasis added). The facts clearly allege that Riddle refused to perform in-court duties and thus that Riddle refused *and/or* failed to perform those duties, just as Charge Three states.

Next, Riddle argues that there is no proof that she actually shut down the court as threatened. That is true, but irrelevant. Where an official credibly threatens retaliation in his or her official capacity, "such threats alone would be . . . wrongful by any standard." *In re Recall of Lee*, 122 Wn.2d 613, 619, 859 P.2d 1244 (1993). For instance, we held sufficient a charge that a mayor threatened to have local law enforcement officers fired if they issued her a traffic citation. *Id.* Like Riddle in this case, the mayor in that case argued the charge was "inadequate because it does not allege that any police officer ever refrained from issuing her a citation because of what she said." *Id.* at 618-19.

We rejected that argument and held that "[e]ven if no officer ever refrained from issuing Mayor Lee a citation out of fear for his job, *such threats alone* would be a clear abuse of the mayor's position of authority over the police department and would be wrongful by any standard."[4] *Id.* at 619 (emphasis added). To the extent Riddle argues that the document at issue in this case was not a threat but a

---

[4] Riddle attempts to distinguish this case on the basis that in *Lee*, "the mayor's threat was coupled with an action: a directive to subordinates to never issue her a ticket." Reply Br. of Appellant at 9. However, the decision in *Lee* was explicitly based on the threat alone, not a threat coupled with an action.

19

mere expression of opinion regarding a hypothetical scenario, a reasonable person reading the language Riddle actually used might well reach a different conclusion.

Finally, Riddle argues that the alleged threat to shut down the court cannot be factually sufficient because it was in a letter "addressed to Ms. Riddle's supporters, family and friends," not to the court. Br. of Appellant at 27. However, this letter was delivered to the Board of Yakima County Commissioners at one of its meetings. CP at 2036. Regardless of the opening salutation, the facts clearly allege that Riddle did not intend for this document to be a private expression of opinion but a publicly directed statement of her intentions.

We affirm that Charge Three is factually sufficient.

c.     Legal sufficiency

Riddle contends Charge Three is not legally sufficient because she had no obligation to perform in-court duties, and therefore she had a legally justifiable excuse for refusing to perform them. She also argues that Charge Three cannot be legally sufficient because she was exercising her First Amendment rights. U.S. CONST. amend I. Riddle misapprehends the scope of her powers, her duties, and the First Amendment.

First, Riddle contends that LAR 3 was enacted without authority of law and is therefore void, so she was justified in refusing to follow it.[5] An action with a legally justifiable excuse is not sufficient for recall, but Riddle's position is not legally justifiable.

While Riddle is correct that she retains authority over the clerk's office, she fails to recognize that she is, "by virtue of [her] office, clerk of the superior court." CONST. art. IV, § 26. As we have explained,

> [t]he duties of a county clerk as clerk of the superior court are defined both *by statute and court rules*. Generally speaking, a clerk of court is an officer of a court of justice, who attends to the clerical portion of its business, and who has custody of its records and files and of its seal. Such an office is essentially *ministerial* in its nature, and the clerk is neither the court nor a judicial officer.

*Swanson v. Olympic Peninsula Motor Coach Co.*, 190 Wash. 35, 38, 66 P.2d 842 (1937) (emphasis added). The superior court "has power . . . [t]o control, in furtherance of justice, the conduct of its ministerial officers," such as county clerks. RCW 2.28.010(5). Therefore, when acting as the clerk of the superior court, the county clerk has always been required "[i]n the performance of his or her duties to conform to the direction of the court." RCW 2.32.050(9); *see* LAWS OF 1891, ch. 57, § 3(9). The clerk's general powers and duties as clerk of the superior

---

[5] Riddle also argues that her initial agreement to provide in-court services is without force because she entered the agreement prior to taking office. This is irrelevant because the charge is that she refused to perform duties required by *law*—that is, by statute and court rule.

21

court are set forth in RCW 2.32.050 and, for Yakima County specifically, LAR 3 and 7 through 10.

Riddle contends that LAR 3, which addresses in-court duties, is void because the court has no authority to "dictate the personnel functions of a different County department." Br. of Appellant at 28. However, as the preceding paragraph explains, a court *does* have the authority to direct the functions of the clerk when he or she is acting in his or her capacity as clerk of the superior court. *Cf.* SAR 16(f) (powers and duties of the Clerk of the Supreme Court). Moreover, the attorney general has opined that a court's rule-making authority in regard to court clerks is subject to the same restrictions as any other rules: "[T]o the extent that the court rule relates to practice and procedure rather than to the creation of substantive law, the rule is within the authority of the court." 2001 Op. Att'y Gen. No. 6, at 3. LAR 3 is within the scope of the court's rule-making authority, and Riddle has no legally justifiable excuse for refusing to follow it.

Second, Riddle contends that her alleged threat to shut down the court was an expression of opinion protected by the First Amendment and that such protected expression cannot be grounds for recall. Riddle appears to be unaware that the First Amendment prevents *governments* from restricting or chilling free speech. 16A AM. JUR. 2D *Constitutional Law* § 400 (2008). A recall proceeding is an action by the voters, not the government. CONST. art. I, § 33. The voters

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

unquestionably have a right to base their decisions on what a public official says, the First Amendment notwithstanding.

While Riddle cites authorities, they do not support her position. One of the cases cited, which does not deal with recall, holds that "[t]o be sure, the First Amendment protects [the plaintiff]'s discordant speech as a general matter; it does not, however, immunize him from the political fallout of what he says." *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 542 (9th Cir. 2010), *cited in* Br. of Appellant at 33. Another, which also does not deal with recall, notes that "[o]ur case law recognizes that the nature of political debate is rough and tumble." *Eaton v. Meneley*, 379 F.3d 949, 956 (10th Cir. 2004), *cited in* Br. of Appellant at 33. And the only case Riddle cites that does involve a recall proceeding dealt with very different questions about a charge that the official committed perjury and false swearing. *In re Recall of Pearsall-Stipek*, 141 Wn.2d 756, 10 P.3d 1034 (2000), *cited in* Br. of Appellant at 34. The court was required to determine whether the elements of those crimes were properly alleged by the facts underlying the charge. It did not engage in any discussion of free speech principles.

Because Riddle's contentions do not have merit, we affirm the trial court's ruling that Charge Three is factually and legally sufficient.

4.    Charge Four: failure to account

Charge Four states that Riddle "[f]ailed, between January 2015 and December 2016 to properly maintain account of the monies received by the Yakima County Clerk's Office." CP at 2442. We affirm the trial court's ruling that Charge Four is factually and legally sufficient.

a.    Background

The Washington State auditor performed a scheduled audit of the Yakima County Clerk's Office covering the year from January 1 to December 31, 2015. The audit determined that stronger internal controls and oversight were needed, noting, among other problems, that several important tasks were not completed until long after they were due and the clerk's office had failed to maintain proper documentation needed for an outsider to verify that collections had been performed correctly.

The audit noted that similar concerns had been raised in two prior audits, but apparently had not been fixed. The cause of the problems, according to the audit report, was that "[t]he Clerk's Office has not devoted sufficient time and resources to ensure proper segregation of duties exists over cash handling and account reconciliations and has not taken the necessary steps to correct reconciliation items noted in the previous audit." *Id.* at 2131.

b.    Factual and legal sufficiency

Riddle's contentions regarding the sufficiency of Charge Four are indistinguishable from those she raises in regard to Charges One and Two. We reject these arguments in accordance with the analysis of the factual and legal sufficiency of Charge One, above, and affirm the sufficiency of Charge Four.

5.    Charge Five: failure to collect jury service fees

Charge Five alleges that Riddle "[f]ailed, between May 2016 and October 2016 to enact procedures to collect for jury services rendered to other courts resulting in a delay of revenue." *Id.* at 2442.

a.    Background

In addition to the Yakima County Superior Court, the Yakima County Clerk's Office provides jury services for one district court and three municipal courts. The clerk's office is supposed to bill those courts for jury services once a month. However, the Washington State Auditor's Office determined that

> [t]he Clerk has not established procedures to ensure the Office is paid for these services. The Office has not billed or collected for jury services provided to the District Court and two municipal courts from May 2015 through August 2016. We estimate these services to be approximately $44,500. In addition, the Clerk provided jury services for one municipal court without an agreement in place from May 2015 to September 2016. The agreement was subsequently signed and billed in October 2016 for $52,411, sixteen months after the service period started.

*Id.* at 2130.

25

*In re Recall of Riddle*, No. 94788-1

b.      Factual and legal sufficiency

Riddle's contentions regarding the sufficiency of Charge Five are indistinguishable from those she raises in regard to Charges One, Two, and Four. We reject these arguments in accordance with the analysis of the factual and legal sufficiency of Charge One, above, and affirm the sufficiency of Charge Five.

6.      Challenge based on the timing of the next general election

Finally, Riddle briefly notes that she will be up for election soon anyway, implying that the recall proceeding is therefore unnecessary. Certainly the recall petitioners, if unsuccessful, may take solace in the fact that Riddle is up for reelection soon, but "we do not suggest that the imminence of a regular election justifies dismissing a recall petition." *Sandhaus*, 134 Wn.2d at 672. The timing of the next election is irrelevant to our analysis.

B.      Ballot Synopsis

Finally, Riddle challenges the adequacy of the ballot synopsis for its failure to identify which charges are malfeasance, which are misfeasance, and which are violations of the oath of office. We decline to review this issue because "[t]he decision of the superior court concerning the adequacy of the ballot synopsis is 'final.'" *In re Recall of Zufelt*, 112 Wn.2d 906, 910, 774 P.2d 1223 (1989); *see* RCW 29A.56.140.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Recall of Riddle*, No. 94788-1

## CONCLUSION

We affirm the trial court's ruling that the five remaining recall charges against Riddle are factually and legally sufficient, and the recall proceeding may move forward to the signature-gathering phase.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Recall of Riddle*, No. 94788-1

27

_____ Jr. J

WE CONCUR:

_____
Fairhurst. CJ.

_____
[signature]

_____
Madsen. J

_____
Owens J

_____
Stephens. J.

_____
Wiggins J.

_____
González, J.

_____
Gordon McCloud, J.